## Hoopsick Petition.

Argued April 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*Earl F. Reed, Jr.,* with him *Michael J. Hoopsick,* appellant, in propria persona.

*Dan P. Arnold,* Assistant District Attorney, with him *Joseph A. Dague,* District Attorney, for appellee.

OPINION BY HIRT, J., July 17, 1952:

Appellant, Michael Hoopsick on September 27, 1950 pleaded guilty to charges of burglary, larceny and attempted burglary. His pleas signed by him, were endorsed on the indictment. He was sentenced to pay a fine and to undergo imprisonment in the Western Penitentiary for a term of from 2 to 12 years. On December 15, 1951, he presented his petition for habeas corpus to the lower court in which he had been sentenced; the writ was refused without hearing. In this appeal from that order appellant contends that he was denied due process because the judge in sentencing him was under a misapprehension as to his past criminal record and was influenced by the opinions of "several [unidentified] people in Oceola" that he had induced a group of younger boys to commit the crimes. The appellant was represented by counsel when sentenced but it is averred that the erroneous assumptions of fact which affected the sentence were not known to either appellant or his attorney at that time. Appellant contends that he first had notice of the facts in a letter from the judge received by him after sentence. It is also averred that a second letter written to him by the sentencing judge indicates that his petition for a writ of habeas corpus was refused by the lower court be-

cause of bias and prejudice and misinformation as to the facts.

On August 18, 1950, a gasoline station and a garage in Houtzdale were broken into and two generators and a battery tester were taken from the service station. In addition to appellant, three others pleaded guilty to all of the offenses although the actual breaking in both instances was committed by one of them, Charles LeForte. On September 29, 1950, the court invited statements from all four defendants and they were examined in open court in the presence of the same counsel who had represented them when their pleas of guilty were entered. From the testimony at that hearing it appears that about 9 p.m. on the day in question appellant in his automobile undesignedly came upon the three other defendants, who had been drinking since early in the evening, and he then invited them to go for a ride. All of the testimony at this hearing was to the effect that appellant was not a party to any plan nor did he have knowledge that burglaries were contemplated by any of the group. At a second hearing before the sentencing judge on October 9, 1950, the three other defendants changed their testimony and then stated that they had perjured themselves at the prior hearing. Two of them then attempted to implicate Hoopsick in the commission of the offenses by testimony to the effect that it was he who suggested the crimes and selected the places to be burglarized. Since appellant's co-defendants exonerated him at one hearing and charged him with complicity in the crimes at another, their diametrically opposed statements under oath deprived their testimony of all probative value. Cf. *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 147, 50 A. 2d 703.

At both hearings Hoopsick denied that he knew of LeForte's intention to break into either the gasoline

station or the garage although at LeForte's suggestion he stopped his automobile at both places. The two generators taken from the garage were put into Hoopsick's car. They were removed from the car the same night by Robert Fish, one of the group, when Hoopsick drove to his home. Fish later disposed of the stolen property by throwing it into a nearby pond. The basis of appellant's plea of guilty was thus stated by him when cross-examined by the District Attorney: "Are you pleading guilty to this burglary and attempted burglary? A. I am pleading guilty to driving the car while it was committed. Q. You are not going to do that. You are either going to plead guilty to burglary and larceny and attempted burglary, or else you are going to stand trial. A. I will plead guilty to it". At the preliminary hearing Hoopsick asserted his innocence; the other three all pleaded guilty. Other relevant facts before the sentencing judge were these: Hoopsick was 25 years old; he had been in trouble once before in connection with the larceny of an automobile, as a result of which he was paroled on payment of a fine. The youngest of the three co-defendants was 19 years of age; each of them had been in conflict with the law on at least one prior occasion. There is nothing in this record to indicate that Hoopsick had any connection with the prior crimes committed by any of them.

The petition for habeas corpus (inartistically drawn by relator without aid of counsel) in effect alleged that sentence was imposed by the court on a misconception of relator's past conduct and the extent of his participation in the crimes to which he had entered pleas of guilty. That his petition was not seriously considered by the court is evident from this excerpt from a letter written by the judge to relator after the petition was filed: "In view of the fact that you say that the pro-

ceedings were invalid because of the improper conduct of the trial judge making improper remarks about your past social activities, all of which were untrue, don't you think you have a lot of nerve asking me to leave you out? Testimony was taken and you entered a plea, and I don't see why we should put the County to the expense of bringing you up from Bellefonte [about 50 miles] on a fishing expedition". This statement supports relator's allegation to the extent that it implies that the sentencing judge accepted the testimony of relator's co-defendants as true insofar as it was unfavorable to him. For the reason which we have indicated, the court, in justice to relator, was bound to ignore the testimony of the young men in its entirety. This left the testimony of relator as the only evidence before the judge at the presentencing hearing in which he denied planning and intentionally participating in the crimes. Another letter written to relator by the judge after sentence tends to support relator's petition, in this excerpt: "There is no doubt that in the Borough of Osceola Mills you were considered as influencing a group of younger boys to commit the crime. Our presentence investigation indicating from several people in Osceola that that was the reputation you had before these crimes were committed. When you appeared before me for sentence the boys had previously told a story different from that which they testified to on the witness stand. That is why I insisted on further check."

The fact that relator was represented by counsel when he pleaded guilty does not necessarily prevent him from asserting lack of due process under the circumstances. On the principle of *Townsend v. Burke,* 334 U. S. 736, 68 S. Ct. 1252, relator is not concluded by misinformation of which neither he nor his counsel had notice, which the court accepted as true as a basis

for the sentence imposed. The language of the judge's letters to relator indicates that an unjudicial attitude and a closed mind prompted the dismissal of the present petition. Moreover, the bias shown in refusing habeas corpus casts doubt also upon the fairness of the judge in imposing sentence. In our view relator is entitled to the writ and a full hearing upon it. If unknown to this prisoner or his counsel he was sentenced on assumptions concerning his past criminal activity which were untrue or upon misinformation as to other material facts, "such a result, [in the language of Townsend v. Burke, supra] whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction [i.e. on the defendant's plea] cannot stand." In *Commonwealth ex rel. Townsend v. Burke*, 361 Pa. 35, 41, 63 A. 2d 77, the effect of the order of the Supreme Court of the United States, in the above cited case, reversing the refusal of a writ of habeas corpus on Townsend's petition, was discussed. And on that authority, pp. 40, 41, there may be merit in relator's contention that there was a denial of due process in the present proceeding. If what relator asserts is true, "the convictions, even based on ostensibly voluntary pleas of guilty, cannot stand any more than can the sentence. Accordingly, the matter is not merely one of remanding the relator to the court below for resentencing". Furthermore if the sentence and pleas are set aside for failure of due process, the indictment remains unaffected and may be proceeded upon "and the defendant put to trial or permitted to plead, as he may then elect. No question of a new trial will in any way be involved".

We, however, are not prejudging the case and we do not mean to imply that the above procedure is to be invoked in the final disposition of this case. What we are deciding is that this relator is entitled to the

writ and a full hearing upon it. In fairness to him therefore the lower court will apply to the Supreme Court for the assignment of an impartial judge to conduct the hearing and to make such order as is right and proper under the facts.

Order reversed and writ awarded with a procedendo in accordance herewith.

Judge ARNOLD did not sit and took no part in the consideration or disposition of this case.