461 A.2d 1223

**In the Interest of Edward STEPHENS, a minor.**

**Appeal of Edward STEPHENS.**

Supreme Court of Pennsylvania.

Argued April 21, 1983.

Decided July 1, 1983.

Raymond Williams, Asst. Public Defender, for appellant.

Dennis C. McAndrews, Asst. District Atty., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal, by allowance, from an order of the Superior Court, 277 Pa.Super. 470, 419 A.2d 1244, affirming an order of the Court of Common Pleas of Delaware County in which appellant Edward Stephens, a juvenile, was adjudged delinquent. Appellant challenges the constitutionality of section 6305 of the Judicial Code, 42 Pa.C.S. § 6305 (formerly § 5 of the Juvenile Act, Act of December 6, 1972, P.L. 1464, 11 P.S. § 50–301), which authorized the court of common pleas to hold a "rehearing" on the petition charging appellant with delinquency following a master's recommendation that the petition be dismissed. Because we conclude that section 6305 is constitutional, we reject appellant's challenge and affirm.

The delinquency petition, filed in February of 1978, alleged that appellant, then fifteen years old, had been involved in an altercation with Santiago Garcia, then twelve, which caused Garcia to sustain injuries to the mouth, teeth, and cheekbone. Appellant was charged with delinquency for having engaged in acts which constitute aggravated assault and simple assault.

Delaware County employs members of the Bar as masters as a means of facilitating the prompt and effective disposition of juvenile cases. See 42 Pa.C.S. §§ 6305(a) and 6305(b).[1] Thus the delinquency petition was assigned to a master, who, on June 21, 1978, held a hearing on the petition. At the commencement of the hearing, pursuant to 42 Pa.C.S. § 6305(b),[2] the master told the parties of their right to have the matter heard in the first instance by a judge, and further told the parties, "Unless there is an objection to this matter being heard before the Master, we are ready to proceed." Neither appellant nor his counsel objected, and the parties proceeded to present evidence on the petition.

The master heard sworn testimony from Garcia and appellant. Garcia maintained that the altercation had been initiated by appellant and that appellant had kicked him in the face. Appellant acknowledged that he had punched Garcia, but claimed that Garcia had initiated the use of force by swinging at him with a stick, pushing him against a wall, and punching him. On cross-examination, appellant stated that he had considered the fight to be "mutual combat." Marvin Mobley, a cousin of appellant and an alleged eyewitness of a portion of the fight, was also sworn as a witness. He testified that Garcia had sustained his injuries only after falling from a stairway near the point at which the fight had begun.

At the conclusion of the hearing, the master stated:

1. Section 6305(a) authorizes this Court to "promulgate rules for the selection and appointment of masters on a full-time or part-time basis," and provides that masters are to be "member[s] of the bar of this Commonwealth." Subsection (b) of section 6305 provides that "[t]he court of common pleas may direct that hearings in any case or class of cases be conducted in the first instance by the master in the manner provided in this chapter [ (Chapter 63—'Juvenile Matters') ]."

2. Section 6305(b) provides in relevant part:
   "Before commencing the hearing the master shall inform the parties who have appeared that they are entitled to have the matter heard by a judge. If a party objects, the hearing shall be conducted by a judge."

"I am certain that the parties, all of them, regret the incident occurred, but at this point in time the Master is not convinced beyond a reasonable doubt that the juvenile defendant should be adjudicated delinquent on the charges of simple assault and aggravated assault and is going to dismiss the Petition."

On a printed form which the Master submitted to the Juvenile Court pursuant to section 6305(c) of the Judicial Code, which requires a master to transmit "written findings and recommendations for disposition to the judge," the master entered the notation "Insufficient evidence beyond a reasonable doubt," and circled, as his recommendation, "Petition dismissed." [3]

The Commonwealth filed a written "Exception to Master's Recommendations and Petition for a Rehearing," which alleged that the master's determination was "arbitrary and capricious," particularly because appellant had "admitted that he considered the fight mutual combat," a misdemeanor of the third degree. See 18 Pa.C.S. § 2701(b). On July 3, 1978, after consideration of the Commonwealth's petition and an answer filed by appellant, the court of common pleas granted a rehearing and scheduled the matter for a hearing "before the regular Hearing Judge at the earliest practicable date." [4]

**3.** Section 6305(c) provides:

*"Recommendations of masters.*—Upon the conclusion of a hearing before a master, he shall transmit written findings and recommendations for disposition to the judge. Prompt written notice and copies of the findings and recommendations shall be given to the parties to the proceeding."

The fact that the master stated, at the close of the hearing on the delinquency petition, that he was "going to dismiss the Petition," is of no consequence for purposes of determining whether appellant was placed in jeopardy at the master's hearing. As the master's recommendation demonstrates, the master properly perceived that he was acting pursuant to his statutorily defined role as an advisor, and not as a "judge."

**4.** Rehearings are authorized by subsection (d) of section 6305, which provides:

*"Rehearing before judge.*—A rehearing before the judge may be ordered by the judge at any time upon cause shown. Unless a rehearing is ordered, the findings and recommendations [of the

On July 25, the date on which the matter was to be heard by a juvenile court judge, appellant filed a motion to dismiss the Commonwealth's petition on the ground that a rehearing before a juvenile court judge would violate appellant's right not to be placed twice in jeopardy. See U.S. Const.Amends. V & XIV; Pa. Const. art. I, § 10. The motion was taken under advisement and, after the submission of briefs, denied.

At the rehearing, held on January 23, 1979, the same persons who had testified at the hearing before the master testified before the juvenile court judge and presented substantially the same versions of the incident as had been presented at the master's hearing. At the close of testimony, but before the entry of an adjudication, the court explored whether appellant's parents would be willing to sign a consent decree discharging appellant on the condition that his parents make restitution of $300 to the parents of Garcia within six months. See 42 Pa.C.S. § 6340 (consent decrees). Appellant's father stated that he would sign such a decree, but after an in-chambers conference the court announced:

> "Counsel [for the juvenile] feels that [appellant] would be waiving certain rights if they settled this matter with a Consent Decree. Therefore, the Court finds the defendant delinquent and directs that the parents [of appellant] pay within six months a sum of $300.00 on account of restitution to the parents of the Garcia boy."

In affirming the order of the court of common pleas, a majority of a panel of the Superior Court held that appellant had "waived his constitutional right not to be placed in double jeopardy" by not objecting to the submission of the matter to the master at the commencement of the master's hearing. 277 Pa.Super. 470, 473, 419 A.2d 1244, 1245 (1980). Appellant contends that his silence at the commencement of the master's hearing may not properly be construed as a knowing and intelligent waiver of his right not to be placed twice in jeopardy, as he was not advised of the possibility

master] become the findings and order of the court when confirmed in writing by the judge."

that the matter could be heard by a judge after having been heard by the master.

■ Appellant's contention is based on the erroneous premise that the double jeopardy clause of the Constitution of the United States and the double jeopardy clause of the Pennsylvania Constitution forbid a rehearing on a delinquency petition before a juvenile court judge following a hearing on that petition before a master. The master's function is, by the express terms of the Judicial Code, confined to the transmittal of "written findings and recommendations for disposition to the judge." 42 Pa.C.S. § 6305(c). The master's findings and recommendations may become the "findings and order of the court" only when "confirmed in writing by the judge," 42 Pa.C.S. § 6305(d), the only official under the legislatively designed system entrusted to enter a binding judgment. Whereas jeopardy attaches at proceedings before a juvenile court judge, "whose object is to determine whether [the juvenile] has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years," *Breed v. Jones,* 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975), clearly jeopardy does not attach at a master's hearing, whose purpose is to facilitate the final disposition of delinquency petitions by a juvenile court judge.

Our conclusion that appellant was not placed in jeopardy at the master's hearing is supported by *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), in which the Supreme Court of the United States upheld the constitutionality of Maryland's master system. Like the master system employed in Pennsylvania, the master system at issue in *Swisher* utilized masters only to make proposed dispositions to a juvenile court judge. In rejecting the contention that Maryland's master system violated the prohibition against double jeopardy, the Court stated:

"[I]t is for the State . . . to designate and empower the factfinder and adjudicator. And here Maryland has con-

ferred those roles only on the Juvenile Court judge. Thus, regardless of which party is initially favored by the master's proposals, and regardless of the presence or absence of exceptions, the judge is empowered to accept, modify, or reject those proposals."

438 U.S. at 216, 98 S.Ct. at 2707.

Appellant contends that, by allowing a juvenile court judge to hear testimony on a delinquency petition afresh, section 6305 impermissibly affords the Commonwealth "another opportunity to supply evidence which it failed to muster at the first proceeding," *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). In support of this contention, appellant relies upon a portion of *Swisher* in which the Supreme Court rejected a similar challenge to Maryland's master system, observing that the Maryland system permitted a juvenile court judge to receive additional evidence "only with the consent of the minor." 438 U.S. at 216, 98 S.Ct. at 2706. On this record, however, it is clear that the Commonwealth did not present evidence before the juvenile court judge that it had previously failed to "muster": Garcia, the victim of the alleged assault, was the sole Commonwealth witness at both hearings, and presented substantially the same testimony. More important, the Supreme Court in *Swisher* did not rely upon Maryland's consent requirement as a condition of that system's constitutionality, but rather recognized that Maryland had conferred the role of factfinder and adjudicator only on the juvenile court judge.

"Properly operated, the juvenile system is capable of giving understanding and sympathetic treatment for each juvenile by providing the correctional, rehabilitative and instructional attention appropriate to each case." *Terry Appeal,* 438 Pa. 339, 349, 265 A.2d 350, 355 (1970), aff'd sub. nom. *Terry v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Because the master system established by section 6305 of the Judicial Code is an appropriate, constitutional means of effectively allocating professional

and judicial resources within our system of juvenile justice, the order of the Superior Court must be affirmed.

Order affirmed.