488 A.2d 1126

**COMMONWEALTH of Pennsylvania**

v.

**Clyde CHARLES, a/k/a Crawford, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1984.

Filed Feb. 15, 1985.

§ 13–21–101, as meaning those injuries which impair well-being or the mental or physical health of the victim.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Edward M. Clark, Assistant District Attorney, Indiana, for Commonwealth, appellee.

Before ROWLEY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

In this case, appellant, Clyde Charles, a/k/a Clyde Crawford, urges this Court to vacate his sentence of 6½ to 13 years on each of two convictions for violation of 18 Pa.C.S. Sec. 3123 (Purdon's 1983) and remand for resentencing. We affirm the judgment of sentence.

Appellant pleaded guilty to 18 Pa.C.S. Sec. 3123, involuntary deviate sexual intercourse, on June 2, 1983, after a 14-year-old boy told his mother, and subsequently, law enforcement authorities, that the following sequence of events had occurred. Appellant, then 56 years old, had asked the boy to run an errand for him; he then invited him

into his home, and told him to disrobe. The boy complied, and appellant laid him on a bed and committed sodomy upon him. Appellant let the boy get up, had a brief talk with the boy in which he warned him about telling anyone of the event, and then committed a second act of sodomy on the boy. Appellant then gave the boy $3 and promised to give him a bicycle and more money if he would return and repeat the sexual acts. The boy told his mother about the instance the following day, and appellant was arrested.

At trial, appellant pleaded guilty to the charge of violating Sec. 3123 twice. Sentencing was deferred; on July 11, 1983, appellant was sentenced to 6½ years to 13 years incarceration on each count, sentences to run consecutively.[1] Appellant filed a timely motion to reconsider sentence.

Appellant complains here, among other things, that he was subjected to double jeopardy and that the sentence rested in part on improper factors. We address his contentions in order.

Appellant argues that the court went through a fact-finding procedure at the sentencing hearing, and that this proceeding was duplicative of the first time appellant appeared before the court on the same charges. This, he argues, constitutes double jeopardy, and violates his rights under the Fifth and Fourteenth Amendments of the Constitution.

The Commonwealth predictably argues that the second proceeding did not subject appellant to double jeopardy, citing *In the Interest of Stephens*, 501 Pa. 411, 461 A.2d

1. The sentence was couched in terms of 78–102 months for each violation. Under the Sentencing Guidelines, 42 Pa.C.S. Sec. 9721, 204 Pa.Code 303.1 *et seq.* (Purdon's 1982), the minimum sentence for a crime with an Offense Gravity Score of 9 and a defendant with a Prior Record Score of 6 would be 78–102 months. The minimum range for a crime with an Offense Gravity Score of 5 and a Prior Record Score of 6 would be 24–36 months. The minimum range for a crime with an Offense Gravity Score of 5 and a Prior Record Score of 3 would be 8–12 months. Appellant contends that his Offense Gravity Score should have been a 5 and his Prior Record Score a 3, which would put him in the 8–12 month minimum range. This is substantially different from 78–102 months, appellant's sentence.

1223 (1983). It argues that not every bifurcated proceeding is violative of double jeopardy principles, and that the rule enunciated in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), has not been abridged.[2]

It seems plain that the principal case cited by appellant, *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), is inapposite. In that case, the defendant had been convicted of murder, and the jury fixed his sentence at life imprisonment rather than death after deciding no aggravating circumstances existed. The state then attempted, at a new trial, to argue that the death sentence should be imposed; the Supreme Court held that such an attempt placed Bullington in double jeopardy, since he had been acquitted of the aggravating circumstances.

■ Here, appellant was not sentenced on the conviction for IDSI until the sentencing hearing. He was not convicted at the sentencing hearing of any crime to which he had not pleaded guilty previously. He has not been "twice put in jeopardy of life or limb."

Appellant's second argument is that he was denied due process because the sentencing court took into account the victim's non-consent when imposing punishment. The Commonwealth agrees that consent was a factor in sentencing, but argues that it was a permissible factor, citing appellant's knowledge that consent was to be an issue, that appellant did not object to the Commonwealth's version of the facts, and that appellant's lawyer cross-examined the victim at the sentencing hearing.

■ Sentencing courts may consider evidence that might not be admitted at trial. *Commonwealth v. Knepp*, 307 Pa.Super. 535, 453 A.2d 1016 (1982). But they may not disregard pertinent facts, disregard the force of evidence or

2. In *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), the Supreme Court held that all charges resulting from one criminal "episode" must be consolidated for one trial. This case is inapposite to the issue at bar, since only one prosecution was initiated against appellant. On the facts of this case, appellant cannot seriously insist that, after failing to convict him in one proceeding, the Commonwealth then instituted a second proceeding against him.

commit errors of law. *Commonwealth v. Franklin*, 301 Pa.Super. 17, 446 A.2d 1313 (1982).

The question is this: Was it error for the sentencing court to inquire into whether the sexual acts were consensual when appellant had pleaded guilty to Sec. 3123? We think not.

The Sentencing Guidelines subdivide IDSI into two offenses for two offense gravity scores:

Sec. 3123   Involuntary Deviate Sexual Intercourse (except where the victim is 14 years of age or over and the act was consensual) . . . . . . . 9.

Sec. 3123   Involuntary Deviate Sexual Intercourse (consensual act, victim is 14 years of age or over) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

At first glance, this is puzzling, since the statute forbids deviate sexual relations with persons under the age of 16, not 14. On studying related sexual offenses, however, we find a similar scheme in offense gravity scores for rape and statutory rape:

Sec. 3121  Rape . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.

Sec. 3122  Rape, Statutory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

[3] We conclude that the Sentencing Commission was attempting to parallel in IDSI offenses the Sentencing Guidelines for rape and statutory rape. Statutory rape, requiring no proof of lack of consent, is deemed a less serious offense under the Guidelines than is rape, which requires a showing of forcible compulsion.[3]

The statute making involuntary deviate sexual intercourse a crime makes no distinction between acts done with consent and acts done with no consent when the victim is

---

3.  The elements of statutory rape, 18 Pa.C.S. Sec. 3122 (Purdon's 1983), are (1) the actor is 18 or over, (2) the actor engages in sexual intercourse with another person, (3) not his spouse, and is (4) less than 14 years old. The elements of IDSI, 18 Pa.C.S. Sec. 3123, are (1) the actor engages in deviate sexual intercourse with another person, (2) by forcible compulsion, or by threat of forcible compulsion, or with an unconscious person, or with a mentally deranged or mentally deficient person, or with a person who is less than 16 years old. It appears that the fifth category of IDSI, deviate sexual intercourse with a person less than 16 years of age, is intended to prohibit any deviate sexual intercourse between an adult and a minor, regardless of consent. In both cases, the legislature has deemed the minor to be incapable of consenting and has deleted the element of lack of consent from the crime.

under 16. If a defendant is convicted of IDSI, the Commonwealth has proven one of five things: (1) forcible compulsion existed; (2) there was a threat of forcible compulsion; (3) the victim was unconscious; (4) the victim was mentally deficient; or (5) the victim was under 16. For the first four, the offense gravity score is 9; for the last, the offense gravity score could be 9 or 5, depending on the sentencing court's determination of the age of the victim and whether there was consent. If the victim was under 14, the offense gravity score is 9. If the victim was over 14, the offense gravity score might be reduced to a 5 if the defendant successfully argues that the victim consented to the act.

We acknowledge that the statutes are inconsistent. If a defendant is convicted of statutory rape, the offense gravity score will be a 5; he need not prove consent. If a defendant is convicted of IDSI with a victim over 14, but under 16, he must prove consent before the offense gravity score will be a 5. If he were charged with rape, consent would be a defense; if he were charged with statutory rape, consent would be no defense, but the recommended penalty lighter. Here, consent is a defense only to a heavier penalty.

■■ In light of the plea colloquy in the record, we do not believe the court erred in considering whether consent existed. The Court heard argument by defense counsel that the offense should be graded a 5, and replied that if there had been a plea bargain to that effect, the Court would reject it. Defense counsel conferred with appellant in court and appellant reiterated that he wanted to plead guilty in the event the Court rejected the proposed offense gravity score of 5. Clearly, appellant understood that by pleading guilty, he could be sentenced to a longer sentence than his lawyer had anticipated, and he chose to plead guilty in light of that knowledge.[4]

4. Apparently, defense counsel had believed that the Commonwealth would agree to an Offense Gravity Score of 5, and at the guilty plea colloquy, communicated his belief to the court. The following colloquy then occurred:

Appellant's third contention is that since no statutory authorization exists for an evidentiary hearing on consent, the court erred in holding one. The Commonwealth argues that the hearing requirement is implicit in the Sentencing Guidelines: we agree.

■ The sentencing court has wide discretion in fashioning its sentence, as long as it follows the Sentencing Guidelines and stays within the statutory maximum. *Commonwealth v. Corson*, 298 Pa.Super. 51, 444 A.2d 170 (1982). It may hear evidence that might not be admitted at trial. *Commonwealth v. Knepp, supra.* Pa.R.Crim.P. 1405(a), 42 Pa.C.S., provides for arguments at the time of sentencing. Given these considerations, we do not believe the lack of explicit statutory authorization means the proceeding should not have occurred.

■ Appellant next argues that he had no notice of the charges, since he thought he was to be convicted of Sec. 3123(5) in pleading guilty, but was actually convicted of 3123(1). A study of the record, as indicated above, shows no merit to this contention. At the guilty plea colloquy, appellant indicated he knew that consent was an issue, and he chose to go ahead and enter a guilty plea in the face of that knowledge. Appellant had notice of the charge and possible penalty.

■ Appellant further contends that he was deprived of his right to cross-examine and present witnesses at the sentencing hearing. A review of the record shows defense

MR. ARENSON (defense counsel): Your Honor, the Defendant has indicated to me that he understands that if this was in the nature of a plea bargain, that leaves him in a position where you can accept the plea bargain, if you choose to believe that my representations are correct, and I have no reason to assume you don't think so, or reject the plea bargain, in which case he will have two choices. One is to plead guilty without any plea bargain, or to stand trial. He has indicated to me he still wishes to go ahead and plead guilty if you choose to reject the plea bargain.

THE COURT: Well, I don't really think it was presented to me in the nature of a plea bargain, I would not wish to be bound by it and would not accept it, but would reject it.

T.T. at 21–22.

counsel acquiesced to a sentencing hearing six weeks after the guilty plea colloquy; the delay was to give counsel time to "prepare more adequately." At the hearing, appellant's counsel cross-examined the victim-witness thoroughly; his contention is meritless.

Appellant argues additionally that there was a "fatal variance" between the information filed, charging him with violating Sec. 3123(5), and his conviction, which allegedly was for Sec. 3123(1) or (2). We have already noted that appellant was convicted for non-consensual IDSI(5); since this is the crime with which he was charged, there is no variance.

Next, appellant argues that because no standard of proof is specified for fact-finding at a sentencing hearing, the procedure does not meet due process standards. The Commonwealth argues that the evidence showed, beyond a reasonable doubt, that the victim did not consent to the acts. The standard of proof for criminal convictions is whether the evidence shows, "beyond a reasonable doubt," that the defendant did the things charged. Here, the evidence showed beyond a reasonable doubt that the victim did not engage in the sexual acts voluntarily. Since the evidence met the highest standard of proof possible, appellant was afforded due process. And, since the sentence is supported by reasons stated on the record, we will not vacate the sentence.[5]

Finally, appellant argues that the sentencing court, by using convictions that may have been obtained in violation of appellant's right to counsel, based its sentence on an illegal factor and that remand is required to investigate the circumstances of the convictions.[6] Appellant would require the Commonwealth to prove that convictions upon which a prior record score of 6 were founded were obtained when

5. *Cf. Commonwealth v. Gaus,* 300 Pa.Super. 372, 373, 446 A.2d 661 (1982) (vacating for failure to give reasons for sentence).

6. On appeal, appellant contends that his Prior Record Score should have been a 3, rather than the 6 used. He apparently admits to the validity of convictions sufficient to support a Prior Record Score of 3.

appellant had the assistance of counsel. The Commonwealth argues that appellant failed to meet his initial burden of producing evidence that the convictions were invalid. We agree.

The Supreme Court has held that a state may not use prior uncounseled convictions to support guilt or enhance punishment:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799] to be used against a person either to support guilt or enhance punishment for another offense (*See Greer v. Beto*, 384 U.S. 269, 16 L.Ed.2d 526, 86 S.Ct. 1447) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was the denial of the right to counsel, the accused in effect suffered anew from the deprivation of that Sixth Amendment right.

*Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967).

The Pennsylvania Supreme Court, in *Commonwealth v. Calvert*, 463 Pa. 211, 344 A.2d 797 (1975), quoted from Burgett and held that the prosecution's failure to establish that the defendant had been represented by counsel at 32 prior proceedings required that the defendant's sentence be vacated. The prior convictions had been presented to the jury as an aid for them in fixing sentence.

Even though *Calvert* was handed down before the Sentencing Guidelines were promulgated, we think the standard delineated by the case holds true today. It is violative of the defendant's due process rights for his sentence to be based, in part, on convictions obtained in violation of his right to counsel.

The question remains as to upon whom the burden rests for the establishment of the validity of the convictions. Here we are guided by the Sentencing Guidelines.

The current Guidelines contain no reference to the burden of production of proof on the issue of prior convictions.

The first draft of the Guidelines, however, contains detailed references:

(g) Burden of Proof

(1) The Burden of Proof shall be on the Commonwealth to determine the number and Offense Rank of previous convictions.

(2) The court shall determine and use the lowest rank which is consistent with the facts, when the Offense Rank of a prior offense is unclear.

Vol. 10 Pa. Bulletin No. 43 at 4183 (Oct. 25, 1980).

These Guidelines were substantially revised to produce the current Guidelines, which say nothing about who shall bring up prior convictions. We only can assume that the Commission, by deleting the noted provisions, had decided that the practice then in effect was the proper practice and should not be changed.

The practice for calculation of a prior record score usually is as follows: The court orders a presentence report, which contains a list of prior arrests and convictions. The court examines the report, and, at the sentencing hearing, listens to arguments by prosecution and defense counsel and entertains their suggestions as to sentence. At that time, counsel make objections to information obtained in the report and the court takes their arguments into consideration. *See* Pa.R.Crim.P. 1405(a), 42 Pa.C.S.

Another guide to our decision is *Commonwealth v. Cowan*, 275 Pa.Super. 341, 418 A.2d 753 (1980), where this Court vacated a judgment of sentence and remanded for resentencing when the lower court had relied on information in a presentence report that the defendant had argued was wrong. The Commonwealth had not brought forth any evidence showing that the report, listing a conviction for larceny, was accurate, after the defendant had protested that the information was wrong; the sentencing court had not stated specifically that it had considered the at-issue conviction in sentencing, but had considered the defendant's record. *Id.*, 275 Pa.Superior Ct. at 342, 418 A.2d at 753.

■ Drawing from *Calvert* and *Cowan,* we hold that the defense has the burden of alleging invalid prior convictions, and that if the allegations appear to have merit, the court ordinarily should inquire into the circumstances surrounding the convictions. If the allegations warrant it, the court should require the production of evidence by the Commonwealth showing the validity of the convictions. If the defendant fails to prove to the satisfaction of the court that the inference of constitutional adjudications is wrong, the court may infer that a presentence report showing convictions is accurate, and proceed on that basis.

■ Here, it is apparent that the defendant raised the possibility of uncounseled convictions at sentencing, as well as in his Petition to Reconsider Sentence. He made no averment that they were obtained without counsel, however; counsel merely raised the possibility that the convictions were invalid. As nothing in the record appears to have required the court to delve further into the matter, we will not disturb its decision to use the convictions in the computation of the defendant's Prior Record Score.

Judgment of sentence affirmed.

POPOVICH, J., concurs in the result.