512 A.2d 1226

**COMMONWEALTH of Pennsylvania,**

v.

**Patrick NEARY, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1986.

Filed July 17, 1986.

94

Janet J. Schoen, Assistant Public Defender, Stroudsburg, for appellant.

John B. Dunn, Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

Before CIRILLO, President Judge, and WIEAND, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This matter comes before this Court on appeal from a judgment of sentence for robbery and criminal conspiracy to commit robbery. The relevant events occurred on December 22, 1981 at approximately 1:40 p.m., when two

masked individuals, one of whom was armed,[1] robbed the Bushkill Branch of the First Eastern Bank located on Route 209 in Monroe County, Pennsylvania. Secluded within the sack of money taken by the robbers was a bait pack consisting of marked money and false currency containing cartridges of red dye and tear gas designed to explode when opened. A bank guard witnessed the robbers leaving the scene in a green Cadillac bearing a tan and black New Jersey license plate fastened to the rear of the vehicle in an inverted position. This witness immediately reported the description of the vehicle to police and indicated that it was traveling south on Route 209 towards Marshall's Creek. A second witness, who was proceeding in the same direction as the alleged get-away car, testified that he saw a green Cadillac exit the bank parking lot and within one-half mile he noticed red smoke pouring from the car's interior. He immediately thereafter smelled the odor of tear gas as the two occupants hung their heads from the car windows. This witness also phoned the state police and provided them with a description of the car and its direction of travel. A third witness, who was walking in the area of the bank at the time of the robbers' escape, not only told the state police that he observed the scenario staged immediately outside the bank, but also was able to describe the driver of the vehicle who was later identified as appellant, Patrick J. Neary.

In response to a police broadcast summarizing the information presented by these witnesses, local police sighted appellant's vehicle and notified the state police who were in pursuit of the robbers. Within a short distance of the area in which the vehicle was last seen, the state police observed the Cadillac swerve out of control in what appeared to be an attempt to avoid apprehension. Consequently, the officers detained appellant's vehicle. As the alleged robbers were being removed from the car, one state policeman testified that he observed an unzipped, dye-stained gym bag on the

1. While the lower court opinion indicated that only one of the two robbers was armed, appellant's brief notes that both robbers were armed.

floor of the car containing such items as clothing and money.  Upon searching the inside of the bag, the officer confiscated one or more guns.  Appellant and his passengers were then arrested and charged with robbery, conspiracy and crimes committed with firearms.  An inventory search of the car's interior later was conducted at the state police barracks in Swiftwater, Pennsylvania.

Appellant's motion to suppress evidence seized during both searches was denied by the lower court on March 18, 1982.  Following a two-day jury trial in May of 1982, appellant was convicted of robbery and conspiracy to commit robbery;  however, a new trial was ordered due to prejudicial statements made by the prosecutor during closing arguments.  The Superior Court affirmed the judgment granting appellant a new trial.  In September of 1984, appellant again was convicted of these charges and subsequently filed motions in arrest of judgment and for a new trial.  These motions were denied on August 7, 1985.  Thereafter, appellant was sentenced to ten to twenty years imprisonment on the robbery conviction and a consecutive sentence of five to ten years on the conspiracy conviction.  In response to appellant's motion for reconsideration of sentence, the lower court resentenced appellant on the conspiracy conviction to a consecutive term of two and one-half to five years incarceration.  Appeal was taken to this Court on October 23, 1985.

Appellant now contends that the lower court erred:  (1) in failing to suppress certain evidence obtained during the search of the car since no probable cause existed for the police to stop the vehicle;  (2) in refusing to grant appellant's request for a mistrial when the jury viewed him being escorted unhandcuffed by uniformed guards to the courthouse;  (3) in refusing to grant his demurrer to the conspiracy charge;  (4) in refusing to order the alleged co-conspirator to answer questions posed by appellant's counsel on direct examination;  (5) in not recusing itself because of alleged bias against appellant;  (6) in refusing to grant appellant a continuance when his witness failed to appear;

and (7) in considering certain convictions which were challenged by appellant in ordering sentence. We will address these arguments *seriatim.*

■ Upon review of appellant's first allegation that his Fourth Amendment rights were violated when the police stopped and searched his vehicle, we are constrained to disagree. It is generally well accepted that when individuals proceeding in an automobile are forced to interrupt their travel at police direction, such action clearly amounts to a seizure of those individuals and basis for that stop must meet Fourth Amendment standards. *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975). Such seizure, however, will not be unreasonable under the Fourth Amendment where probable cause exists at the time of that seizure. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

> Probable cause exists where "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925).
>
> In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

*Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 333 (1959).

■ We believe that under the facts and circumstances here the police had probable cause to believe that the occupants of the vehicle had robbed the First Eastern Bank in Bushkill, Pennsylvania. Our review of the record indicates that when the state policemen approached appellant's car, they not only were aware that an armed bank robbery

had occurred but they were also provided with a description of the robbers' vehicle and a direction of their travels. In addition, the state troopers were informed that a local policeman had sighted a vehicle similar to the one described via a police broadcast within a short distance of the area in which the robbers were apprehended. Moreover, the swerving movement of the vehicle provided further indication that the occupants were attempting to avoid apprehension. Consequently, we believe that the seizure was supported by sufficient probable cause.

■ Appellant next contends that the seizure of his dye-stained gym bag by one of the state policemen was a violation of his Fourth Amendment rights. We disagree. Our Court has previously held that where police have a right to be in the position of observation they can lawfully seize objects in plain view provided, however, that the incriminating character of the evidence is apparent. *Commonwealth v. Yacoubian*, 339 Pa.Super. 413, 489 A.2d 228 (1985). Since the officers in the instant case were aware that the dye pack had exploded as the robbers were escaping from the scene, we therefore must conclude that the seizure of the dye-stained gym bag by the state trooper can be justified under the plain view doctrine and did not infringe appellant's legitimate expectation of privacy.

■ The further warrantless search and seizure of items contained within the gym bag, such as the dye-stained money, clothing and weapons, can be justified on the basis of a warrantless search of an automobile. Traditionally, our Courts have been lenient in allowing some departure from the warrant requirement for certain automobile searches because of vehicles' inherent mobility and the "diminished expectation of privacy generally accorded automobiles because of their open construction, their function, and their subjection to a myriad of state regulations". *Commonwealth v. Milyak*, 508 Pa. 2, 8, 493 A.2d 1346, 1349 (1985) *citing Commonwealth v. Timko*, 491 Pa. 32, 38, 417 A.2d 620, 623 (1980) *citing United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *see also, South*

*Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482 (1978). In justifying a warrantless search of an automobile, our Pennsylvania Supreme Court has stated:

> (A)n officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.

*Commonwealth v. Lewis,* 442 Pa. 98, 101, 275 A.2d 51, 52 (1971). Under this standard, we must necessarily conclude that where there exists probable cause related to the vehicle or its occupants, a search of the vehicle is permissible. *Milyak,* 508 Pa. at 8, 493 A.2d at 1349 (1985). Based on the facts stated above, the state policeman acted properly in seizing the gym bag and its contents. Moreover, the search and seizure of the contents of this bag was permissible under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (the Court permitted the warrantless search of closed containers found within a vehicle).

Appellant's next contention that the trial court erred in refusing to grant a mistrial after several jurors observed him being led from the jail to the courthouse is without merit. In such instances, we have continuously held that a "brief accidental sighting of a defendant in custodial trappings, without more, is not so inherently prejudicial as to significantly impair the presumption of innocence to which the defendant is entitled." *Commonwealth v. Miller,* 247 Pa.Super. 132, 138, 371 A.2d 1362, 1365 (1977).

In the present case, the appellant was observed on several occasions being escorted by two uniformed sheriff's deputies. Although appellant was not handcuffed, he was being held on the arm by the deputies. After conducting a voir dire examination of a juror involved in one of the incidents, the trial court concluded that no prejudice result-

ed from the sighting and the motion for mistrial was therefore denied. The trial court ruling is consistent with *Commonwealth v. Mayhugh*, 233 Pa.Super. 24, 336 A.2d 379 (1975), in which case we held that a brief and inadvertent sighting of the defendant in the custody of deputy sheriffs in a manner similar to the case at bar did not result in prejudice sufficient to warrant the granting of a mistrial. The trial court therefore correctly ruled on this issue.

■■■ Nor are we persuaded by appellant's next argument that the trial court erred in refusing to grant appellant's demurrer to the conspiracy charge on the basis that there could not have been an agreement to conspire since the alleged co-conspirator, Mr. Ehly, was unable to form the necessary intent to enter into such an agreement. The *raison d'etre* for this allegation is an order of the lower court dated April 5, 1983 in which the alleged co-conspirator was declared incompetent to stand trial due to his long history of alcohol and drug abuse and a psychotic brain disorder. We are keenly aware that the crime of conspiracy requires proof of more than a single participant, however, this does not mean that a valid conviction for conspiracy against one defendant must be held in limbo pending the outcome of all alleged co-conspirators, or that a valid conspiracy conviction must subsequently be nullified as a result of an acquittal of the other(s) charged. *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980); *Commonwealth v. Emanuel*, 501 Pa. 581, 462 A.2d 653 (1983) (acquittal of defendant's unindicted co-conspirator on charges relating to the same transaction underlying defendant's case did not require reversal of defendant's conviction for conspiracy). In the instant case, the co-conspirator was not declared incompetent until April of 1983, some one and one-half years after the robbery occurred. It is our belief that a declaration of incompetency to stand trial is unrelated to a determination of whether the alleged co-conspirator formed the requisite intent at the time of the crime to enter into the conspiracy. Consequently, we affirm the trial court's decision denying appellant's demurrer.

With respect to appellant's next contention that the trial court erred in refusing to order the alleged co-conspirator, Mr. Ehly, to answer questions posed by appellant's attorney on direct examination, we disagree. An accused in a criminal case is guaranteed "the right to offer the testimony of witnesses, and to compel their attendance, if necessary ..." pursuant to Article I, Section 9 of the State Constitution and the Sixth Amendment to the Federal Constitution. *Commonwealth v. Rolon,* 486 Pa. 573, 406 A.2d 1039 (1979) *citing Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). Nevertheless, the witness so compelled to testify also has a corresponding privilege against self-incrimination as guaranteed by Article I, Section 9 of the State Constitution and the Fifth Amendment of the Federal Constitution. The standard by which the trial court determines whether such a witness must testify has been enunciated by our Supreme Court in *Commonwealth v. Carrera,* 424 Pa. 551, 227 A.2d 627 (1967), when it stated: "For the court to properly overrule the claim of privilege, it must be perfectly clear from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded cannot possibly have such tendency." *Id.,* 424 Pa. at 553, 554, 227 A.2d at 629.

The following discussion reportedly took place at sidebar prior to Mr. Ehly being called to the stand, involving Judge Vican, Assistant District Attorney Lear, Ms. Tiracchia, appellant's attorney and Mr. Rosenblum, attorney of record for Mr. Ehly.

MS. TIRACCHIA: I'd like to put on the record that I want to call Raymond Ehly as a witness to testify on behalf of my client. Mr. Ehly was a co-defendant in this case originally and is accused along with my client, Patrick Neary, of committing the robbery at First Eastern Bank.

THE COURT: I have an understanding that he has been adjudicated by this court to be an incompetent and is currently housed at Farview State Hospital.

MR. ROSENBLUM: If I may amend that, he has been found by the psychiatrist to be incompetent to stand trial based upon his inability to comprehend the charges that he's facing as well as his inability to participate in his own defense. The psychiatrist further found that he'll never be competent to stand trial. I met with my client briefly and I'm pleased to report that he recognized me. I have advised him that his Fifth Amendment privileges will be exercised, that I will so inform the Court and instruct counsel for both sides. I do no (sic) believe he should be called to the witness stand because I don't believe he has the foggiest idea of what is going on and I sincerely mean that and I think it will be disruptive of the trial because it will force me to speak for him, if I may, for any questions that are asked of him. I don't think he can formulate the appropriate words at this point in time, I really don't.

THE COURT: So, he's going to exercise his right to the Fifth Amendment?

MR. ROSENBLUM: That's correct.

THE COURT: Anything else?

MR. ROSENBLUM: Well, on behalf on my client, I would object to his being called.

THE COURT: Charges are still pending against him?

MR. ROSENBLUM: They certainly are.

MR. LEAR: The Commonwealth really has no position in regard to this particular matter, it's a defense request to call him. The Commonwealth only makes sure that— knowing that Mr. Ehly had counsel, Mr. Rosenblum, that Mr. Rosenblum was notified and requested to come over. We're taking no position with regard to everything else.

MR. ROSENBLUM: I have to take the position—almost an adversarial position. I don't believe that a witness may be called, where counsel is on notice that the witness is going to exercise the Fifth Amendment. I know if the Commonwealth did it the defense would have grounds for mistrial.

THE COURT: That's right.

MR. ROSENBLUM: I believe the case law is that you can't call a witness who is going to exercise the Fifth Amendment privilege, but I don't know if I have standing to object.

THE COURT: I don't either.

MR. ROSENBLUM: But I object.

MR. LEAR: Mr. Rosenblum, you are making a motion to the Court to quash the subpoena to compel his attendance?

MR. ROSENBLUM: I can't do that because there is nothing wrong with subpoenaing him here. I object to his being called as a witness.

MS. TIRACCHIA: Well, my client has asked that he be called and wants him called.

THE COURT: Naturally your client is not interested in seeing this thing resolved properly, he want errors on the record and that's all he wants, it's very obvious the way this case has been conducted.

MR. ROSENBLUM: At the very least I'll need substantial time with my client if he is, in fact, going to be called and I will be very frank with the Court, I'll (have) a typed statement prepared for him to read, I don't think he's competent to do anything else.

THE COURT: Can he read?

MR. ROSENBLUM: I assume he can. I mean, his mental status was such that prior to his commitment to Farview, he had insisted that he had never been in any trouble prior to this incident. The man had served four years in the state penitentiary. The man is delusional, I really cannot, with any degree of accuracy, predict anything that will come out of his mouth. At least tomorrow I'll have had a type written one for him to read.

THE COURT: Make a handwritten one. The Commonwealth is not objecting to it and if he wants the guy to come forward, he'll have to stand up and say he wants to plead the Fifth Amendment. If I don't permit him to testify it will give Neary another appeal issue and we wouldn't have some appellate judge in Philadelphia say-

ing we abused this. We'll have someone down there find that this is a wonderful idea and rather than give those people a chance to backbite, we'll make him testify.

(End Sidebar discussion.)

\*    \*    \*    \*    \*    \*

RAYMOND CHRISTOPHER EHLY, called as a witness on behalf of the Defendant, being duly sworn according to law, testified as follows:

## DIRECT EXAMINATION

BY MS. TIRACCHIA:

Q.   Mr. Ehly, do you know Patrick Neary?

A.   I refuse to answer the question, I am exercising my Fifth Amendment right to remain silent.

MS. TIRACCHIA: May we approach the Bench, Your Honor.

(Sidebar discussion off record.)

Q.   Mr. Ehly, are you willing to answer any questions about what happened on December 22, 1981?

A.   I refuse to answer the question, I am exercising my Fifth Amendment right to remain silent.

MS. TIRACCHIA: I ask that the witness be excused.

THE COURT: You are excused, Mr. Ehly.

MR. ROSENBLUM: May I be excused, Your Honor.

THE COURT: Yes.

\*    \*    \*    \*    \*    \*

■■ It is apparent to us that Mr. Ehly would have incriminated himself if he had been obliged to testify given the evidence of record suggesting Mr. Ehly's complicity in the robbery. Even more significant, we question this witness's ability to testify inasmuch as he had been declared incompe-

tent to stand trial in his own case. Consequently, we must conclude that the trial court properly refused to compel Mr. Ehly to testify.

■ Appellant next assigns as error the trial judge's failure to recuse himself from presiding at the second trial following a statement made by the trial judge at a bail reduction hearing during the first trial. It is appellant's position that this statement indicated the trial judge's belief that appellant was guilty of the crimes charged. Moreover, appellant listed several other acts committed by the judge during the course of the second trial which demonstrated his prejudice against appellant. After a studied review of this matter, we fail to detect the existence of, or even the appearance of, any impropriety in either the judge's remarks or through his acts which would have indicated his prejudice or bias against appellant. It is noteworthy that not only was the jury not exposed to any comments made by the judge, but such remarks were within the judge's right to comment on the strengths and weaknesses of the case. Moreover, our courts will not even find the appearance of any impropriety merely because the presiding judge participated in an earlier stage of a proceeding. *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982).

■ Appellant further alleges error by the trial court in refusing to grant a continuance when his witness failed to appear. It is well settled in our case law that if testimony which an absent witness would give is merely cumulative or available from another source, then a continuance may be properly denied. *Commonwealth v. Howard*, 466 Pa. 445, 353 A.2d 438 (1976). In the present case, the absent witness had previously testified under oath at the first trial of the defendant on the same charges and stated during his contempt proceeding that he would not have added to nor modified his earlier testimony. Thus, since the absent witness's testimony was available at the time of appellant's

request for continuance, the trial court properly denied appellant's motion.

Lastly, appellant contends that the trial court erred during the resentencing hearing by considering a report of criminal convictions compiled by the FBI.[2] Appellant argues that certain convictions contained in the report were erroneously attributed to him and that a review of the entire report was an "impermissible consideration" which rendered the sentence invalid pursuant to *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977). The FBI report, which was obtained during the presentencing investigation, assigned to appellant six prior convictions occuring between 1967–1983.[3] Appellant challenged three of the six convictions, claiming he was not the person responsible for those crimes. In *Commonwealth v. Charles*, 339 Pa.Super. 284, 488 A.2d 1126 (1985), we noted that the burden of alleging invalid prior convictions listed in a presentence report is on the defense and that if the allegations appear to have merit, the court should inquire into the circumstances surrounding the convictions. In the present case, the probation officer, after describing the method by which the data in the FBI report was compiled, testified that the information was accurate and that all convictions contained therein were attributable to appellant. Since appellant offered no evidence in support of his allegation, we are satisfied that the trial court's inquiry of the challenged convictions was sufficient to satisfy the standard set forth in *Charles* and, therefore, we affirm the trial court's decision.

Judgment of sentence affirmed.

**2.** Although not directly raised in this appeal, we note that appellant's sentence for the robbery and conspiracy convictions does not exceed the statutorily prescribed limit. 18 Pa.S.C.A. Sec. 1103.

**3.** Several other challenged convictions occurring before 1967 were disregarded following the resentencing hearing in that such convictions were uncounseled and therefore invalid. *See Commonwealth v. Calvert*, 463 Pa. 211, 344 A.2d 797 (1975). This change was reflected in the reduction of appellant's sentence for the conspiracy conviction from five to ten years imprisonment to two and one-half to five years imprisonment.