# Commonwealth v. Holmes

C.P. of Lehigh County, no. CR.-2880-2009.

*Jeffrey Burd, deputy district attorney,* for Commonwealth.

*Carol Marciano,* for defendant.

STEINBERG, *J.,* July 16, 2010—On February 11, 2010, the defendant, Leroy Holmes, was found guilty following a jury trial of theft by unlawful taking or disposition[1] and receiving stolen property.[2] The defendant was convicted of unlawfully taking personal belongings from the Garcia household while they were at church. The police recovered Mrs. Garcia's purse and its contents during a vehicle stop of the defendant's vehicle shortly after the theft. The jury determined that the stolen property had a value of $200 or more, but less than $2,000.

Following the guilty verdict this court ordered a presentence investigation report. A sentencing hearing was held on April 6, 2010, at which time this court determined that the conviction for receiving stolen property would merge with the conviction for theft by unlawful taking or disposition. Thereafter, the defendant was sentenced to a period of incarceration of not less than 24 months nor more than 60 months in a state correctional institution.

On April 16, 2010, the defendant filed a timely "postsentence motion." In that post-sentence motion the defendant challenges the court's determination that the defendant's prior record score is three and also seeks to have this court modify/reconsider the sentence. A hearing on the post-sentence motion was held on June 21, 2010.

---

1. 18 Pa.C.S. §3921(a).
2. 18 Pa.C.S. §3925(a).

For the reasons discussed below, the "defendant's post-sentence motion" is denied.

## BACKGROUND

On May 31, 2009, the Garcia family, who resided at 324 1/2 North Jefferson Street in Allentown, left their home around noontime to worship at their church. When the last members of the Garcia household departed for church, their home was secured. Their church activities kept them away from their home until approximately 3 p.m., and upon returning home, they discovered it was burglarized. Specifically, when Ms. Garcia entered the front of her home she noticed CDs scattered on the floor, stereo equipment missing, and her back door open. During Ms. Garcia's testimony, she provided a room by room inventory of the items stolen, which included stereo equipment, laptop computers, a television, Playstation 3 with games, and $50. Additionally, Ms. Garcia's purse was stolen from the residence.

The police were called, and Officer Jason Ehl of the Allentown Police Department responded at approximately 3:30 p.m. Ms. Garcia explained what they had discovered, and that her husband was speaking with a neighbor. The neighbor, Kaleb "Nate" Beauplan, informed the police that he observed a "big banana boat car" parked in the alley behind the Garcia residence. Mr. Beauplan described the vehicle as a yellowish in color car from the 70s with a dog in the back seat. He observed two males, one black and the other white, making four to five trips back and forth from the residence to the car. They were both "moving things" from the residence. Some of the items he described during his testimony included a Playstation 3, computers and something that

"looked like a television." He also noticed that the car was running while the items were being removed from the Garcia residence. Following the vehicle's departure, Mr. Beauplan observed that the gate to the Garcia's yard was open, a window in the back of the home was open, and an air conditioning unit was sitting on the ground outside the window. Mr. Beauplan then began walking back to his residence when he heard someone say, "Oh my god" in Spanish, and saw Mr. Garcia. He told Mr. Garcia what he had observed, and provided a description of the vehicle. He also suggested that someone examine the security camera at the beauty salon at the end of the alleyway.

Officer Ehl and Ms. Garcia were able to review the video footage from the security camera, and observed a very large older model vehicle, which was yellow in color. The vehicle was seen exiting the alleyway. While Officer Ehl was viewing the video footage, Mr. Garcia began searching for the vehicle, which he located in the area of 7th and Gordon Streets. He followed it, secured the license plate number, and contacted his wife about his discovery.

Officer Ehl was immediately notified of Mr. Garcia's discovery, and responded in his police vehicle. He observed the vehicle heading north on 10th Street, and then turn right on Gordon Street. He activated his lights and siren and within a short distance the vehicle, which was registered to the defendant, stopped. The front passenger, however, exited the vehicle and fled.

Officer Ehl approached the driver's side of the vehicle, and the defendant, who was the driver of the vehicle, was ordered out of the vehicle. Inside the vehicle, on the

center bench seat, was a purse with large long straps and an ornate buckle. It was identified by Ms. Garcia as her purse that was taken from her home. An inventory of the purse revealed a driver's license, credit cards, and other items of the Garcias. The other items stolen were not found in the vehicle, and were never recovered. However, the defendant's apprehension did not occur until 30–40 minutes after Officer Ehl's arrival at the Garcia home.

The defendant was arrested and taken to police headquarters. The defendant waived his *Miranda* rights and provided a written statement to police. He told the police that he gave his friend Flow a ride to Flow's parents home, helped to gather Flow's belongings in the home, and moved the belongings to Flow's girlfriend's home. The defendant claimed that he was unaware that Flow did not reside at that address or that the items taken were not Flow's.

The Garcia's testified that they did not know the defendant or Flow and did not give anyone permission to enter their home while they were at church. Additionally, the Garcia's testified that their air conditioning unit was inside their home, not outside on the ground, when they left their home on May 31, 2009.

## DISCUSSION

The defendant's initial contention is that this court incorrectly calculated his prior record score.[3] A misapplication of the sentencing guidelines constitutes a chal-

---

3. 204 Pa. Code §303.4—§303.8.

lenge to the discretionary aspects of a sentence. *Commonwealth v. Archer,* 722 A.2d 203, 211 (Pa. Super. 1998). Therefore, although a sentencing court is not obligated to sentence within the sentencing guidelines, to properly exercise its discretion, accurate guidelines must be applied to reach the correct point of departure. *Commonwealth v. Diamond,* 945 A.2d 252, 259 (Pa. Super. 2008), citing *Archer,* 722 A.2d at 210.

The defendant alleges that his prior record was a two and not a three. The specific offense in dispute was the defendant's prior adjudication for burglary in Florida on November 8, 2004. The presentence investigation report assessed only one point for this offense, while this court scored that offense as a two point offense.[4] The effect of this dispute would minimally change the standard range of the guidelines. Specifically, if the burglary adjudication only resulted in being a one point offense, the overall standard range would be RS-9.[5] If the offense was a two point offense, the standard range would be RS $\leq$ 12.[6]

The presentence investigation report calculated the defendant's prior record score based upon a review of the following adjudications or convictions:

---

4. See section 303.7(a)(3).

5. The presentence investigation report was corrected during the sentencing hearing to reduce the offense gravity score (OGS) from a 5 to a 3. This change also affected the sentencing guidelines calculation. The defendant had no objection to that OGS reduction.

6. The aggregate prior record score as calculated by this court was a 3.

| Charges | Location | Date of Adjudication | Grading | Disposition |
|---|---|---|---|---|
| **Juvenile Record:** | | | | |
| 1. Simple Assault; Recklessly Endangering Another Person | Allentown, PA | 03/01/2001 | Misdemeanor 2° | Adjudicated Delinquent |
| 2. Aggravated Assault; Simple Assault | Allentown, PA | 03/01/2001 | Misdemeanor 2° | Adjudicated Delinquent |
| 3. Simple Assault | Allentown, PA | 07/19/2001 | Misdemeanor 2° | Adjudicated Delinquent |
| 4. Aggravated Assault | Wyoming County, PA | 04/30/2002 | Felony 2° | Adjudicated Delinquent |
| 5. Burglary | Palatka, FL | 02/04/2004 | | Adjudication Withheld |
| 6. Vehicle Theft | Palatka, FL | 02/04/2004 | | Adjudication Withheld |
| 7. Burglary: Petty Larceny | Palatka, FL | 11/08/2004 | | Adjudicated Delinquent for Burglary and Grand Theft Larceny (2 counts), admitted to St. John's Regional Juvenile Detention Center |
| 8. Grand Theft Larceny; Vehicle Theft | Florida | 11/08/2004 | Felony ° | |
| 9. Burglary; Damage to Property; Grand Theft Larceny | Palatka, FL | 11/08/2004 | Felony ° | |
| **Adult Record:** | | Date of Conviction | | |
| 10. Theft by Unlawful Taking; Receiving Stolen Property; Unauthorized Use of a Motor Vehicle | Allentown, PA | 05/14/2007 | Felony 3° | 12 – 24 months Lehigh County Prison + 24 months probation |
| 11. Theft by Unlawful Taking; Receiving Stolen Property; Unauthorized Use of a Motor Vehicle | Allentown, PA | 05/14/2007 | Felony 3° | 12 – 24 months Lehigh County Prison + 24 months probation |
| 12. Theft by Unlawful Taking; Corruption of Minors; Criminal Conspiracy to Theft from a Motor Vehicle | Allentown, PA | 05/14/2007 | Misdemeanor 3° | 6 – 12 months Lehigh County Prison |

The first nine offenses were committed by the defendant when he was a juvenile. However, the first four would not be considered in the prior record score because they occurred prior to the defendant's 14th birthday.[7]

No dispute existed that the adjudications for grand theft larceny on November 8, 2004[8] would add one point to the defendant's prior record score. The dispute pertains to assessing two points for the burglary adjudication that also occurred the same date.[9] If two points for the burglary adjudication is the correct calculation, then two points would be added to the defendant's prior record score for all of these offenses. "Only the most serious juvenile adjudication of each prior disposition is counted in the prior record score."[10] In fact, the defendant's entire juvenile history only resulted in two points towards his prior record score.

During the sentencing hearing, this court heard argument on whether the burglary adjudication should be considered a one or two point offense. "[W]henever the information contained in the presentence [investigation] report is challenged by the defendant at sentencing it is incumbent upon the court to engage in a fact-finding function to determine the truth or falsity of the statements contained in the report." *Commonwealth v. Medley,* 725 A.2d 1225, 1229 (Pa. Super. 1999), quoting *Commonwealth v. Kerstetter,* 398 Pa. Super. 202, 207, 580 A.2d 1134, 1135-36 (1990). "When a defendant alleges his prior record score is incorrect because he was not respon-

---

7. See section 303.6(a)(1). The defendant had a total of 15 juvenile arrests.

8. Offense dates: May 1, 2004, May 11, 2004.

9. Offense date: April 13, 2004.

10. See section 303.6(b).

sible for certain prior convictions listed in the presentence report, the court should inquire into the circumstances surrounding the convictions." *Medley,* 725 A.2d at 1229. However, the defense has the burden of alleging invalid prior convictions. *Commonwealth v. Neary,* 355 Pa. Super. 92, 107, 512 A.2d 1226, 1234 (1986); *Commonwealth v. Charles,* 339 Pa. Super. 284, 296, 488 A.2d 1126, 1132 (1985).

Here, the defendant does not deny that he was adjudicated delinquent for burglary, but claims that the Florida statute for burglary encompasses less severe offenses. Specifically, the Florida burglary statute includes entering a "dwelling, a structure, or a conveyance with the intent to commit an offense therein . . . ." Defense counsel provided a copy of the Florida statute, but was unable to provide docket entries or other evidence to demonstrate that the adjudication was not equivalent to Pennsylvania's burglary statute. The presentation of a statute, which may or may not support the defendant's position, does not satisfy the defendant's burden to show that the allegations appear to have merit justifying further inquiry.

Furthermore, in light of the defendant's overall criminal history and the sentence imposed of not less than 24 months nor more than 60 months, which was a deviation regardless of the prior record score calculation, this dispute had a negligible impact on the sentence. This is especially true when considering the defendant's adult offenses, which involved the thefts of two vehicles and a theft from a third vehicle. Additionally, the defendant was on parole for those offenses when he committed this theft. Although only one point was added to the defendant's prior record score for these three separate of-

fenses[11] because they were imposed in one judicial proceeding, it is apparent that the prior record score was an inaccurate gauge of the defendant's criminal history.[12]

The defendant also contends that his sentence was excessive and unreasonable, and that the court failed to set forth adequate reasons for the sentence. However, a review of these claims, which pertain to the discretionary aspects of the defendant's sentence, do not present a substantial question regarding the sentence.

"It is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." *Commonwealth v. Ladamus,* 896 A.2d 592, 595 (Pa. Super. 2006) see also, *Commonwealth v. Shugars,* 895 A.2d 1270, 1274 (Pa. Super. 2006), *Commonwealth v. McNabb,* 819 A.2d 54, 55 (Pa. Super. 2003) and *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002). The defendant must demonstrate that a substantial question exists concerning the sentence. *Commonwealth v. Lee,* 876 A.2d 408, 411 (Pa. Super. 2005). A substantial question exists when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlies the sentencing process. *Mouzon,* 571 Pa. at 434, 812 A.2d at 627. See also, *Commonwealth v. Garcia-Rivera,* 983 A.2d 777, 779 (Pa. Super. 2009), quoting *Commonwealth v. Hoch,* 936 A.2d 515, 518 (Pa. Super. 2007).

"The determination of whether a particular issue raises a substantial question is to be evaluated on a case-

---

11. Offense dates: December 25, 2006, December 26, 2006 and December 30, 2006.

12. See section 303.5(d).

by-case basis." *Commonwealth v. Perry,* 883 A.2d 599, 602 (Pa. Super. 2005). However, a substantial question requires something more than alleging the failure to consider a mitigating circumstance or excessiveness. See *Ladamus,* 896 A.2d at 595. See also, *Commonwealth v. Cannon,* 954 A.2d 1222, 1229 (Pa. Super. 2008) (A claim of inadequate consideration of mitigating circumstances does not raise a substantial question for review). Likewise, merely alleging that the sentence was unreasonable because it was outside the guidelines does not establish a substantial question. *Commonwealth v. Johnson,* 873 A.2d 704, 708 (Pa. Super. 2005). See also, 42 Pa.C.S. §9781(c)(3).

The defendant contends that this court failed to state its reasons for deviating from the guidelines.[13] A claim that the trial court failed to state its reasons for deviating from the guidelines presents a substantial question. *Garcia-Rivera,* 983 A.2d at 780. "Where the trial judge deviates from the sentencing guidelines . . . he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range." *Commonwealth v. Wagner,* 702 A.2d 1084, 1086 (Pa. Super. 1997), quoting *Commonwealth v. Royer,* 328 Pa. Super. 60, 70-71, 476 A.2d 453, 457 (1984). The defendant's claim is contradicted by the record[14] and as such fails to present a substantial question.

---

13. Defendant's post-sentence motion, motion to modify/reconsider sentence ¶¶4,6.

14. Notes of testimony sentencing (N.T.S.), pp. 38-44.

Even if the merits of the defendant's sentencing contentions are considered, the defendant fails to demonstrate that there was an abuse of discretion in imposing a sentence outside the guidelines. *Commonwealth v. Walls,* 592 Pa. 557, 564, 926 A.2d 957, 961 (2007); *Hoch,* 936 A.2d at 519. The following explanation has been used as the starting point for determining if the sentencing court properly exercised its discretion:

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Fullin,* 892 A.2d 843, 847 (Pa. Super. 2006), citing *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa. Super. 1999) (en banc).

Furthermore, if "the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable" its responsibilities have been fulfilled. *Commonwealth v. Gibson,* 716 A.2d 1275, 1277 (Pa. Super. 1998), citing *Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893 (1996).

A sentence that exceeds the sentencing guidelines does not make the sentence unreasonable. The guidelines are advisory and nonbinding, but the sentencing court must consider them in formulating a sentence. *Walls,* 592 Pa. at 569, 926 A.2d at 964. The purpose of the guidelines was explained in *Walls* as follows:

156

"Consultation of the guidelines will assist in avoiding excessive sentences and further the goal of the guidelines, viz., increased uniformity, certainty, and fairness in sentencing. Guidelines serve the laudatory role of aiding and enhancing the judicial exercise of judgment regarding case-specific sentencing. Guidelines may help frame the exercise of judgment by the court in imposing a sentence. Therefore, based upon the above, we reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." *Id.* at 570, 926 A.2d at 964-65.

Here, this court considered the sentencing guidelines in imposing the defendant's sentence and recognized that the sentence was a deviation from the guidelines.[15] A departure, however, was appropriate and reasonable in this case. The defendant's criminal history reflects multiple assault and theft-related adjudications and convictions, dating back to 2001. The defendant was only paroled for three theft-related offenses less than 13 months prior to his arrest on this theft-related crime. The defendant was also on probation for the aforementioned theft offenses when he committed this offense. See *Commonwealth v. Simpson,* 829 A.2d 334, 339 (Pa. Super. 2003) (The fact that the defendant was on probation at the time of offense was a proper factor in imposing sentence). The sentencing guidelines did not adequately reflect the

15. N.T.S., p. 44.

repetitive crimes committed by the defendant, and his inability to avoid serious criminal conduct for any meaningful period of time.[16]

Prior to imposing sentence, not only was the presentence report and the sentencing guidelines considered, but also the "protection of the public, the gravity of the offense as it relates to the impact on the victim and the defendant's rehabilitative needs." 42 Pa.C.S. §9721(b); *Commonwealth v. Feucht,* 955 A.2d 377, 383 (Pa. Super. 2008), While the Garcia family was in church thinking their home was secure, the defendant participated in the theft of their property. Their security was significantly compromised by the actions of the defendant and his unknown confederate.

The defendant has now either been adjudicated or convicted nine times for theft-related offenses since 2004. He has demonstrated that the public is at risk from his criminal conduct. Attempts within the juvenile system to assist him, *i.e.* Saint Michael's School for Boys and Northwestern Academy, have not altered or even abated his fascination with other people's property.

Moreover, his conduct within an institutional setting has also been less than exemplary. When he was at Saint Michael's he was discharged for assaulting a teacher. During his prior sentence for the theft offenses, he was placed in the work release program, but removed less than 60 days later for violating rules and regulations. He was returned to that program approximately four months later, and again removed from that program four and one-half months later.

---

16. See section 303.5(d).

The defendant contends that consideration should have been given to the positive changes made by him in the year between his parole and new arrest. Unfortunately, the positive changes are "few and far between." While his family remains supportive and he now has a child, aside from some employment where he ironically worked for Lehigh Law Enforcement providing security at local events, the changes were not significant. This is especially true in light of this arrest after his relatively recent release from prison.

Finally, the defendant suggests he received a burglary sentence even though he was only convicted of a theft offense. This allegation is inaccurate and unsupported by the record. The defendant, by his continued criminal conduct, has demonstrated that a county sentence is no longer appropriate. Juvenile placements and county prison have been unsuccessful deterrents to renewed crimes. The length and breadth of his crimes, while only 21 years of age, more than adequately justified the deviation from the guidelines.

For all the foregoing reasons, the defendant's challenge to his sentence is dismissed.

## ORDER

And now, July 16, 2010, upon consideration of the "defendant's post-sentence motion" in the above-captioned matter; and for the reasons set forth in the accompanying opinion;

It is hereby ordered the "defendant's post-sentence motion" is denied.