531 A.2d 441

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Andrew TILGHMAN.**

Superior Court of Pennsylvania.

Argued April 7, 1986.

Filed Sept. 1, 1987.

Maxine J. Stotland, Assistant District Attorney, Philadelphia, for Com., appellant.

Leonard N. Susnov, Assistant Public Defender, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BROSKY, Judge:

This appeal is from the judgment of sentence imposed after appellee entered a negotiated plea to burglary. Appellant, the Commonwealth, contends that (1) the court below erred in refusing to include appellee's juvenile adjudications in computing his prior record score; and (2) assuming that appellee's prior record score was correctly computed, the totality of the circumstances indicates that the sentencing court imposed an unreasonably lenient sentence. Finding appellant's first contention to be without merit and the second to have been waived, we affirm the judgment of sentence.

On June 29, 1984, appellee, Andrew Tilghman, pled guilty to a charge of burglary. The guilty plea was negotiated only to the extent that it was agreed that the Commonwealth would recommend that appellee be sentenced in the mitigated minimum range. Sentencing was then deferred.

On December 13, 1984, appellee appeared for sentencing. The parties agreed that the offense gravity score for the burglary offense was "5", but disagreed as to whether a prior juvenile adjudication of involuntary deviate sexual

intercourse could be used in computing appellee's prior record score. The prior record score was "0" without inclusion of the juvenile adjudication and "3" with such inclusion. The sentencing court determined that it was proper to use the prior juvenile adjudication in computing appellee's prior record score. It then sentenced appellee to 4 to 23 months imprisonment, a sentence in the mitigated range applicable to a defendant with a prior record score of "3" and an offense gravity score of "5."

Appellee filed a timely motion to modify sentence on December 21, 1984. On the same date, the court below filed an order vacating the sentence it had imposed. The sentencing court held a hearing on February 21, 1985, at which time it reversed its earlier decision, and held that appellee's prior juvenile adjudication could not be considered in computing his prior record score. The court then sentenced appellee to 24 months probation, a sentence in the mitigated range applicable to a defendant with a prior record score of "0" and an offense gravity score of "5."

On March 4, 1985, the Commonwealth filed a motion to modify sentence which the court below denied without a hearing. This appeal timely followed.

Appellant initially argues that, although the sentencing court purported to sentence appellee within the sentencing guidelines,[1] it applied the guidelines erroneously when it did not include in its computation of appellee's prior record score his juvenile adjudication of delinquency which had been based on the commission of the felony of involuntary deviate sexual intercourse. We disagree.

■ Initially, we note that a party may not appeal as of right the discretionary aspects of a sentence for a felony or a misdemeanor, but may only request this Court to allow an

1. Pursuant to 42 Pa.C.S. § 2155 and 204 Pa. Code § 303.1(d), the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing, see 204 Pa. Code §§ 303.1–303.9, *reprinted following* 42 Pa.C.S. § 9721, became effective on July 22, 1982 as to all offenses committed on or after that date. Since the offense involved in the instant case was committed on January 5, 1984, the guidelines are applicable to this case.

appeal on the basis that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Commonwealth v. Easterling,* 353 Pa.Super. 84, 509 A.2d 345 (1986); 42 Pa.C.S. § 9781(b). In *Easterling,* a panel of this Court held that there is a substantial question that the sentence is inappropriate if, after a brief review of the record, we are not substantially convinced that one of the following three circumstances is not before us:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.[2]

**2.** The *Easterling* court defined a substantial question in this manner because, under 42 Pa.C.S. § 9781(c), a finding that any one of these circumstances exists empowers this Court to vacate a judgment of sentence and remand for resentencing. We note, however, that 42 Pa.C.S. § 9721(b) provides that:

> In selecting from the alternatives set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. *Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.* (emphasis added).

Thus, this Court may also vacate a judgment of sentence and remand for resentencing where a sentencing court fails to comply with the requirements of § 9721(b). Under the rationale of *Easterling,* we

Here, the sentencing court, while purporting to sentence within the guidelines, refused to consider a prior adjudication of delinquency of appellant in computing appellant's prior record score despite the fact that the adjudication was of a type required by § 303.7(b) of the guidelines to be included in a calculation of a prior record score.[3] These circumstances convince us that there is a substantial question at least as to whether the sentencing court erroneously applied the guidelines and thus as to whether the sentence imposed in this case is appropriate. Therefore, we shall accept the Commonwealth's appeal.

Although the sentencing guidelines do provide in § 303.7 for inclusion of certain juvenile adjudications of delinquency in the computation of a defendant's prior record score, the basis for the decision of the court was that the Pennsylva-

therefore believe that there is also a substantial question that the sentence imposed is inappropriate if one of the requirements of § 9721(b) is before us.

3. At the time the sentencing court reached its decision, § 303.7 stated the following in relevant part:

(b) Adjudications of delinquency and other prior convictions.

(1) The offenses scored in this subsection are as follows:

(i) All prior convictions for felonies and all prior convictions for the weapons misdemeanors listed in subsection (a)(3).

(ii) All prior juvenile adjudications of delinquency where there was an express finding that the adjudication was based on the commission of a felony or one of the weapons misdemeanors listed in subsection (a)(3) where the adjudication occurred on or after the defendant's 14th birthday.

Section 303.7 was amended, effective June 5, 1986, and now provides the following in relevant part:

(b) Adjudications of delinquency and other prior convictions.

(1) The offenses scored in this subsection are as follows:

(i) All prior convictions for felonies and all prior convictions for the weapons misdemeanors listed in subsection (a)(3).

(ii) Each prior offense which resulted in a juvenile adjudication of delinquency where:

(A) there was an express finding by the juvenile court that the adjudication was for a felony or one of the weapons misdemeanors listed in (a)(3),

(B) the offense occurred on or after the defendant's 14th birthday, and

(C) the currently sentenced offense is a felony.

No other juvenile adjudication of delinquency shall be counted in the prior record score.

nia Sentencing Commission exceeded the authority granted it by the Legislature by providing for such inclusion. The Legislature authorized the creation of the Pennsylvania Commission on Sentencing in 42 Pa.C.S. §§ 2151–53 and in § 2154 specifically directed the Commission to adopt sentencing guidelines as follows:

Adoption of guidelines for sentencing

The Commission shall adopt guidelines for sentencing within the limits established by law which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant. The guidelines shall:

(1) Specify the range of sentences applicable to crimes or a given degree or gravity.

(2) *Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies* or convicted of a crime involving the use of a deadly weapon.[1]

(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.

(emphasis added).

Before discussing the issue raised by appellant, we think it important first to make clear what the Commonwealth does not contend. It does not contend that the term "convicted" as used in § 2154(2) encompasses juvenile adjudications of delinquency as well as adult convictions. As part of its determination that the Sentencing Commission lacked the power to include juvenile adjudications in the computation of the prior record score, the sentencing court held that the Legislature in using the words "previously convicted" was not also referring to persons who have been previously adjudicated delinquent in a juvenile proceeding. It based this holding on its reading of the Juvenile Act, 42 Pa.C.S. §§ 6301–65, and of caselaw and on an application of general principles of statutory construction. As the Commonwealth

---

4. This provision led the Commission to adopt the "prior record score" set forth at 204 Pa. Code § 303.7.

has not challenged this holding on appeal, we need not address whether a juvenile adjudication constitutes a prior conviction, or whether there exists any interrelationship between § 2154(2) and the Juvenile Act, 42 Pa.C.S. §§ 6301–65.

What the Commonwealth does contend is that § 2154(2) merely sets forth the minimum criteria that the Sentencing Commission was required to consider and did not constrain the Commission to include consideration of only the specified criteria. We believe the Commonwealth's position is contrary to the relevant principles of statutory construction.

■ First, the limits of the power conferred on an administrative agency must be strictly construed. *Murphy v. Commonwealth*, 506 Pa. 549, 486 A.2d 388 (1985).

> "The principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined." *Green v. Milk Control Comm'n*, 340 Pa. 1, 3, 16 A.2d 9 (1940).
>
> See also *Volunteer Firemen's Relief Ass'n v. Minehart*, 425 Pa. 82, 227 A.2d 632 (1967); *Community College of Delaware County v. Fox*, 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975). Only those powers within the legislative grant, either express or necessarily implied, can be exercised by the administrative body.

*Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 735–36 (1978).

■ Under this principle of statutory construction, the Commission had the power to specify a range of sentences of increased severity based on criteria not specified in § 2154(2) only if such a power was expressly within or necessarily implied by the legislative grant. We think it clear from a reading of § 2154 that it neither expressly grants nor *necessarily* implies that the Commission had the power in question. Thus, the conclusion we must reach

from the foregoing principle is that the Commission did not have the power to specify a range of sentences of increased severity based on criteria not specified in § 2154(2). In other words, the Sentencing Commission lacked the power to adopt guidelines in which the prior record score was computed on the basis of anything other than prior convictions of felonies or convictions of a crime involving the use of a deadly weapon.

This conclusion is also consistent with another principle of statutory construction, the general statutory maxim, *expressio unius est exclusio alterius.* "As the maxim is applied to statutory interpretation, where ... [the] things to which it refers are designated, there is an inference that all omissions should be understood as exclusions." Sutherland, *Stat. Const.* § 47.23; see also, *Gaebel v. Thornbury Township, Delaware County,* 8 Pa.Cmwlth. 379, 303 A.2d 57 (1973). Thus, since § 2154(2) designated previous felony convictions and convictions of a crime involving the use of a deadly weapon as those things for which a range of sentence of increased severity could be specified, there is an inference that the Legislature intended that no other considerations could be so used.[5]

In an attempt to circumvent this basic maxim, the Commonwealth argues that the Legislature demonstrated that § 2154(2) was intended to include prior juvenile adjudications in the prior record score, as the Legislature did not reject that portion of the sentencing guidelines when the guidelines were submitted to the Legislature by the Commission. However, 42 Pa.C.S. § 2155 provided that the guidelines would become law if not rejected by *concurrent legislative resolution* within 90 days of their submission. The guidelines were submitted to the Legislature on January 23, 1982, and were approved by the Senate on April 20, 1982. The House took no action with respect to the guidelines although, in any event, it was powerless to stop the guidelines from becoming effective once the Senate had

---

**5.** In effect, the principle of statutory construction applicable to administrative commissions is simply a particular example of the principle of *expressio unius est exclusio alterius.*

approved them. On April 23, 1982, the sentencing guidelines became effective in Pennsylvania. We believe it would be inappropriate to ascribe a legislative intent to the fact that the Legislature did not reject that portion of the guidelines dealing with prior juvenile adjudications when the House did not even vote on the matter. The Commonwealth's position here simply fails to persuade.[6]

**6.** The dissent addresses the implications of Act 165 of 1986: Act of December 11, 1986, which has amended both 42 Pa.C.S. § 2154 and 204 Pa.Code § 303 in order to permit the inclusion of juvenile adjudications in the computation of prior record scores. The dissent contends that the amendments, as well as Chairman O'Brien's commentary, support its view that we are misconstruing the legislature's original intent, prior to amendment.

As the dissent points out, Act 165 has amended the definition of "prior conviction" at 204 Pa.Code § 303.7(g). However, the legislature has also amended the Commission's enabling legislation at 42 Pa.C.S. § 2154 as follows:

§ 2154. Adoption of guidelines for sentencing.

(a) ... The guidelines shall

\*      \*      \*      \*      \*      \*

(2) *Specify a range of sentences of increased severity for defendants previously convicted of or adjudicated delinquent for one or more misdemeanor or felony offenses committed prior to the current offense. For purposes of this section "previously convicted or adjudicated delinquent" shall include any finding of guilt or adjudication of delinquency whether or not sentence has been imposed or disposition ordered prior to the commission of the current offense.*

Purdon's Pennsylvania Legislative Service, Session of 1986, 170th Session, Acts 1986–144 to 1986–213, at pp. 105–06. (Emphasis in the original).

Chairman O'Brien's commentary on the above amendment states that "(S)everal court opinions have questioned the authority of the Commission to include ... juvenile adjudications of delinquency in the prior record score ...", noting the opinion in this matter. *Pennsylvania Bulletin*, Vol. 16, No. 51, Dec. 20, 1986, p. 4867, Chairman O'Brien continues by noting that "Act 165 of 1986 provides explicit authority" for the inclusion. *Id.* These statements, in combination with the amendment of 42 Pa.C.S. § 2154(a)(2), contrary to the assertions of the dissent, do not lead to the unavoidable conclusion that we are misconstruing legislative intent. Rather, it supports the position we have taken that the original enabling act, in the absence of explicit authority, does not permit the inclusion of juvenile adjudications in the computation of prior record scores. If the original enabling act permitted their inclusion, the legislature would have merely needed to re-define "prior conviction" to include juvenile adjudications, and would not have been compelled to alter the Commission's enabling legislation.

■ We thus find no merit in the Commonwealth's contention that § 2154(2) merely set forth the minimum criteria that the Sentencing Commission was required to consider. Therefore, the Commonwealth has advanced no basis on which we could conclude that the sentencing court erred in holding that the Sentencing Commission had no power to specify a range of sentences of increased severity for defendants previously adjudicated delinquent and thus erred in not including appellee's prior adjudication in his prior record score.

With respect to the Commonwealth's second contention on appeal, we must, again, make clear what the Commonwealth does not contend. It does not contend that prior adjudications of delinquency may be used as an "aggravating circumstance", under § 2154(3), to place a sentence in the aggravated range. The sentencing court held that prior juvenile adjudications could not be considered as an "aggravated circumstance", but could only be considered in deciding where within an otherwise appropriate range to sentence a defendant. The Commonwealth has not challenged this holding on appeal.[7]

■ What the Commonwealth does contend is that, even if appellee's prior record score was computed correctly, and thus his sentence was within the mitigated range of the guidelines, the sentence was unreasonably lenient under the totality of the circumstances. The Commonwealth argues that any minimum sentence of less than four months impris-

Moreover, Chairman O'Brien's commentary indicates that the redefinition of "prior conviction" is not in response to our opinion in this matter, but, rather, is merely intended to incorporate the view espoused in *Commonwealth v. Wolfe*, 349 Pa.Super. 415, 503 A.2d 435 (1986) and *Commonwealth v. Mourar*, 349 Pa.Super. 583, 504 A.2d 197 (1986), that prior convictions must, in order to be includable in a defendant's prior record score, antedate the commission of the offense upon which sentence is currently being imposed. *Id.*

7. Since the Commonwealth has not questioned this holding on appeal, a decision as to whether the holding is inconsistent with this Court's decision in *Commonwealth v. Lupatsky*, 341 Pa.Super. 338, 491 A.2d 845 (1985) must await another day. In *Lupatsky*, we held that while summary offenses may not be included in a prior record score computation, they can be used as an aggravating circumstance.

onment would be unreasonable.[8]  However, except for the claim that the court below applied the guidelines erroneously, see 42 Pa.C.S. § 9781(c)(1), the only claim made by the Commonwealth in its motion to modify sentence was that the sentencing court had sentenced appellee outside the sentencing guidelines and that the sentence unreasonably deviated from the guidelines, see 42 Pa.C.S. § 9781(c)(3). It is well-settled that sentencing issues not raised in a motion to modify sentence are waived. *Commonwealth v. Duffy*, 341 Pa.Super. 217, 491 A.2d 230 (1985); *Commonwealth v. Warden*, 335 Pa.Super. 315, 484 A.2d 151 (1984). Therefore, we conclude that the Commonwealth has waived its claim that a sentence in the mitigated range is unreasonably lenient.[9]

Finding no merit to either of the Commonwealth's claims, we will affirm the judgment of sentence. Judgment of sentence affirmed.

ROWLEY, WIEAND, MONTEMURO, BECK, POPOVICH and JOHNSON, JJ., join.

CIRILLO, President Judge, files a concurring statement.

TAMILIA, J., files a dissenting opinion.

CIRILLO, President Judge, concurring:

I concur in the result, but write separately to point out that the majority seems to be perpetuating a standard for determining when to allow an appeal of the discretionary

**8.** A minimum sentence of four months imprisonment would be in the standard (minimum) range of 0–12 months imprisonment for an offense gravity score of "5" and a prior record score of "0".

**9.** Appellee argues that the Commonwealth should be estopped from advancing its claim because it had agreed to recommend a sentence in the mitigated range. Given our disposition of the Commonwealth's claim, we need not resolve that question. Our disposition also makes it unnecessary to resolve the rather interesting question of whether under § 9781(c)(2), we may vacate a sentence and remand for resentencing where a sentence within one of the applicable guideline ranges would be clearly unreasonable, but a sentence within either of the other two applicable ranges would not be clearly unreasonable.

aspects of sentence that the Pennsylvania Supreme Court repudiated in *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

The probationary sentence under review is a legal sentence, and therefore no party may appeal it as of right. *See* 42 Pa.C.S. § 9781(a). Before this court may accept an appeal from the discretionary aspects of a legislatively permissible sentence, the appellant must invoke our discretionary jurisdiction by showing "that there is a substantial question that the sentence imposed is not appropriate under [the Sentencing Code]." *Id.* § 9781(b). In Pa.R.A.P. 2119(f), the supreme court has prescribed the manner in which an appellant must petition our court to allow a discretionary appeal of this sort:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

After oral argument in this case, the supreme court held in *Tuladziecki* that this court had improperly allowed an appeal from the discretionary aspects of a sentence without requiring the jurisdictional statement specified by 2119(f). Thereafter, the Commonwealth in this case filed a motion to supplement its brief with a "concise statement" under 2119(f) setting forth the reasons it relied upon for allowance of appeal, and we granted that motion. The Commonwealth has now set forth in a 2119(f) statement that the sentencing court refused to consider the defendant's prior adjudication of delinquency in calculating his "prior record score" as required by the Sentencing Guidelines, 204 Pa.Code § 303.-7(b), *reprinted in* 42 Pa.C.S.A. § 9721 note (1982). I agree with the majority's decision to hear this appeal, because it appears to me that the Commonwealth's statement demonstrates a "substantial question" that the scheme of the

Sentencing Code as a whole "has been compromised." *See Tuladziecki*, 513 Pa. at 513, 522 A.2d at 20.

However, the majority persists in stating the standard for allowance of appeal to be that:

there is a substantial question that the sentence is inappropriate if, after a brief review of the record, we are not substantially convinced that one of the following three circumstances is not before us:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the guidelines and the sentence is unreasonable.

At 443. This manner of searching for reasons for allowing an appeal is, in my view, contrary to the spirit of *Tuladziecki*, which held that this court had erroneously allowed an appeal of the discretionary aspects of a sentence even though it was outside the guidelines and "unreasonable." *See id.*, 513 Pa. at 516 n. 2, 522 A.2d at 21 n. 2 (Larsen, J., dissenting). Although *Tuladziecki*'s primary holding was that we must require a rule 2119(f) statement before allowing an appeal of the discretionary aspects of sentence, its implicit and broader holding is that compliance with the Sentencing Guidelines is not the only nor even the most important factor we should consider in deciding whether to allow an appeal. Rather, the supreme court has issued a gentle reminder that the 2119(f) requirement "furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to *exceptional cases*," 513 Pa. at 513, 522 A.2d at 19–20 (emphasis added), and that, in deciding whether a "substantial question" of sentencing inappropriateness exists to justify our allowance of appeal, we should consider the proprie-

ty of that sentence under "the entire Sentencing Code," *id.*, 513 Pa. at 513, 522 A.2d at 20, not merely under the Sentencing Guidelines.

TAMILIA, Judge, dissenting:

This Commonwealth appeal comes before the court challenging the trial judge's determination that section 303.-7(b)(1)[1] of the Sentencing Guidelines, which provides for the inclusion of juvenile adjudications and prior misdemeanor convictions in a prior record score, cannot be used except to determine where, within a specific range, a sentence should fall.

Appellee, Tilghman, entered a negotiated guilty plea to burglary on June 29, 1984. At the time of sentencing on December 13, 1984, his prior record score was set at "3" because of a juvenile conviction for involuntary deviate sexual intercourse, and a four to twenty-three month sentence was imposed. The appellee filed a motion for modification of sentence on December 19, 1984 and the original sentence was vacated by the court on December 20, 1984. After the reconsideration hearing on February 21, 1985, the trial judge lowered appellee's prior record score to "0" and sentenced appellee to twenty-four months probation. Upon denial of the Commonwealth's motion for modification, this appeal followed.

The basis for the trial court's decision was first that nothing in 42 Pa.C.S.A. § 2154 (the enabling act adoption

---

1. **§ 303.7 Prior Record Score**

   (b) *Adjudications of delinquency and other prior convictions.*

   (1) The offenses scored in this subsection are as follows:

   (i) All prior convictions for felonies and all prior convictions for the weapons misdemeanors listed in subsection (a)(3).

   (ii) Each prior offense which resulted in a juvenile adjudication of delinquency where:

   (A) There was an express finding by the juvenile court that the adjudication was for a felony or one of the weapons misdemeanors listed in (a)(3).

   (B) The offense occurred on or after the defendant's 14th birthday, and

   (C) The currently sentenced offense is a felony.

   No other juvenile adjudication of delinquency shall be counted in the prior record score.

provisions) authorizes a more severe range of sentences for persons previously convicted of misdemeanors, and similarly, because of the use of the word "convictions" rather than "adjudications", only the consideration of juvenile matters is authorized, not their use in prescribing a harsher range of punishment. The court concludes as well that prior misdemeanor convictions and juvenile adjudications cannot be included as aggravating circumstances under an expressio unius theory according to which the term prior record does not fall within the rubric of "aggravating circumstances' since it is not specifically mentioned.

Appellant, characterizing the court's reasoning as casuistry, argues that both legislative history and principles of statutory construction compel the conclusion that the intent of the legislature was to include juvenile adjudications in fashioning punishment, otherwise the uniformity at which the guidelines are directed is undermined by the court's inability to fashion sentences on the basis of complete data. The Commonwealth also argues that the latter occasioned appellee's sentence, one which, it is contended, is based on a failure to consider the statutorily mandated totality of the circumstances. The conclusion reached by appellant is that in view of appellee's background, including drug and alcohol problems, juvenile history, (other than the IDSI) and adult history, the sentence is inappropriately lenient.

While the issue that "previously convicted" would encompass "juvenile adjudication" was not raised by the Commonwealth in the court below, we have no problem with considering the issue. The majority, as does the appellee, relies heavily on 42 Pa.C.S.A. § 6354 of the Juvenile Act, Effect of adjudication; subsection (a) states: "An order of disposition or other adjudication ... is not a conviction of crime and does not impose any civil disability ordinarily resulting from a conviction...." The trial court, presented this issue for our determination when it decided "previously convicted" did not mean juvenile adjudication. Despite the Commonwealth's agreement with the trial court that conviction as used in section 2154(2) does not comprehend adjudica-

tions of delinquency as well as adult convictions, in our review we may determine whether or not the trial court was correct in that determination. We have not raised the issue sua sponte, it was presented to us by the trial court's findings and by implication as a major thrust of the Commonwealth's brief in relying on a totality of circumstances argument. Even had the issue not been raised below, the constitutionality of a statute may be raised for the first time by the appellee, even if the appellant is prohibited from doing so, to sustain a judgment. *In re Adoption of McCray*, 460 Pa. 210 n. 5, 331 A.2d 652 n. 5 (1975) citing *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955). Appellee's counter statement of questions involved was the correctness of the trial court in concluding that the sentencing commission could not use prior juvenile adjudications as convictions for adult sentencing purposes under the guidelines. For the above reasons, the issue is properly before us.

The intent of subsection 6354(a) is to assure that a juvenile adjudication does not carry the taint of criminal conviction as to civil liberty. It is circumscribed by the phrase "does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment."

This is in keeping with the rehabilitative purpose of the juvenile legislation—to prevent juvenile adjudications from interferring with a person obtaining employment, voting, getting into school, obtaining credit or any of the myriad of other aspects of life where a "conviction-adjudication" would cause a penalty.

In an entirely separate subsection, 42 Pa.C.S.A. § 6354(b) *Effect in subsequent judicial matters*, the legislature indicated the intent to clearly distinguish it from subsection (a); subsection (b) provides:

**(b) Effect in subsequent judicial matters.**—The disposition of a child under this chapter may not be used against him in any proceeding in any court other than at

a subsequent juvenile hearing, whether before or after reaching majority, except:

   (1) in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report; or

   (2) if relevant, where he has put his reputation or character in issue in a civil matter.

Clearly, the legislative intent was to insulate the juvenile from the consequence of his behavior so far as any civil liability might arise but not to throw the shield around him once he became an adult, if he continued in a life of crime. The legislation is finely tuned so that the person who remains law abiding is protected and the person who is not and is convicted of crimes, after reaching majority, loses the shield. The law clearly distinguishes between pre-conviction and post-conviction consequences. In a civil action, if he places his reputation or character in issue, the prior juvenile record may be introduced to contest it. (Section 6354(b)(2)). By limiting it to civil matters, by implication, it may not be introduced to impeach credibility in criminal matters, because it comes under section 6354(a) as a civil disability and may not be treated as a conviction for evidentiary purposes due to the specific exclusion. He retains the mantel of protection of subsection (a) for criminal matters until he has been convicted as an adult. The exclusion is removed for criminal dispositional purposes by section 6354(b)(1). *See Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973).

Simply stated, juvenile adjudications are not to be treated as convictions of crimes for any purpose except in dispositional proceedings after conviction as an adult of a felony, for purposes of presentence investigation and report or if relevant where he puts his reputation or character in issue in a civil matter.

Clearly, *Katchmer* may be distinguished from this case as there, reputation and character were in issue as to an informational witness in a criminal matter, and *since neither subsection (b)(1) or (b)(2) existed.* The predecessor to

subsection (a) was controlling, and the issue presented in the case sub judice, was not considered.

The trial court overreaches in applying *Katchmer, supra,* to the present situation. *Katchmer* interpreted only that language in the Juvenile Court Law, Act of June 2, 1933, P.L. 1433, § 19, 11 P.S. 261 (repealed by Act of December 6, 1972, P.L. 1464, No. 333, § 337, 11 P.S. § 50–337 (Supp. 1973–74)) which provides:

> **§ 261. Children before juvenile court not to acquire disabilities**
>
> No order made by any juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by the criminal laws of the Commonwealth, nor shall any child be deemed to be a criminal by reason of any such order or be deemed to have been convicted of crime. The disposition of a child or any evidence given in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court. 1933, June 2, P.L. 1433, § 19.

While in *Katchmer* the Supreme Court ruled on this section, which was applicable at the time, Justice Nix recognized the addition to the law that came about by passage of the act of 1972, stating in *Katchmer:*

> We need not here consider the effect of section 324 of the Juvenile Act of 1972, Act of December 6, 1972, P.L. ——, no. 333, § 27, 11 P.S. 50–324 (Supp.1973–74).

*Id.,* 453 Pa. at 465, n. 4, 309 A.2d at 594 n. 4.

The first section of section 6354 is derivitive of section 261 of the act of 1933, the second section, (b)(1) and (2), is the addition that occurred under the amendments of 1972, P.L. 1464, No. 333, § 27, Act 1977, August 3, P.L. 155, No. 41. *Katchmer* did not and could not rule on these sections, and they bring a significant and substantially restricted protective mantel to be cast over juvenile offenders.

The turbulance of the 70's impelled the legislature to remove from the protection afforded juveniles the effect of adjudication as opposed to conviction, when it added the two categories enumerated in sections (b)(1) and (2). This was

in keeping with the national trend toward crime and offenders which resulted in mandatory sentencing in some cases, and sentencing guidelines to restrict the discretion of judges, and to some degree, to assure imposition of minimum sentences. The sentencing guidelines, as developed by the Sentencing Commission, were entirely consistent with this legislation, and the Commission's legislative mandate, to bring about consistency and uniformity of sentencing, and to give appropriate weight to prior convictions. If it failed to give some weight to juvenile convictions (which it has moderated) as opposed to prior adult convictions, the sentencing guidelines become badly skewed. The Sentencing Commission, in comments to this section, in its published guide indicated it adopted this section after it had extensive discussion with the Juvenile Court Judges' Commission, individual judges, legislators, attorneys and other criminal justice professionals, and after several public hearings. The Commission, to accommodate concerns about ambiguity of juvenile adjudications, required that the Juvenile Court Order must expressly find that the juvenile committed a felony or one of the weapons misdemeanors listed in section 303.7(a), Pa.C.Sent.2d (September 1, 1986), p. 52. It is not uncommon or unheard of for a juvenile offender to spend five to ten years in custody before he is sentenced on his first adult offense. To give no weight to serious crimes, which are applicable only if there has been an adult adjudication or conviction, would be to treat a very serious former juvenile offender in some instances, as a first time offender when applying the guidelines. This does not serve the public nor does the correctional system, represented by probation, parole and institutional officials, have an equitable basis for treatment. The uniformity which was the underlying purpose and legislative intent, is defeated. *Commonwealth v. Smith*, 333 Pa.Super. 179, 481 A.2d 1365 (1984), is equally applicable here as in the situation where prior juvenile adjudications were to be considered by the court in presentence reports. To deny the weighing, which the guidelines would provide, is to permit the consideration of the adjudication without quantifying its effect or

as expounded below, may prevent their consideration at all. This destabilizes the sentencing process.

In ascertaining the legislative intent, we must look to 1 Pa.C.S.A. § 1921, Legislative intent controls:

> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

If the term "conviction" as used in 42 Pa.C.S.A. § 6354(a) controlled in all respects, there would be an internal conflict because in subsections (b)(1) and (b)(2) only if the adjudications are construed to be convictions would they carry the weight which permits them to be seriously considered in sentencing or as character rebuttal in civil cases. Prior arrests alone, which did not result in a conviction, may not be considered in sentencing. *Commonwealth v. Shoemaker*, 226 Pa.Super. 203, 313 A.2d 342 (1973) (consideration of prior arrests without a conviction ignores the presumption of innocence and was error); *Commonwealth v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (on remand 361 Pa. 35, 63 A.2d 77 (1949) (considering prior criminal charges which did not result in convictions and were dismissed or resulted in acquittal is inconsistent with due process of law); *Commonwealth v. Bryant*, 312 Pa.Super. 379, 458 A.2d 1010 (1983) (no error in reviewing prior arrest record when trial judge *acknowledges* he had no convictions); *Commonwealth v. Craft*, 304 Pa.Super. 494, 450 A.2d 1021 (1981) (trial court did not give undue weight to prior arrests); *Commonwealth v. Wolfe*, 349 Pa.Super. 415, 503 A.2d 435 (1986) (prior convictions must precede commission of principle offense to be included in prior record score calculations). In *Commonwealth v. Johnson*, 333 Pa.Super. 42, 481 A.2d 1212 (1984), this Court permitted review of prior arrests without conviction, and subsequent convictions to the one at issue as reflecting on defendant's character as a convicted repeat offender. However, the underlying assumption is that the trial court had knowledge that the arrest did not result in conviction as the court may

not treat the arrest as a conviction in sentencing. Nowhere is this more clear than in decisions of the U.S. Supreme Court in *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (uncounselled guilty plea resulting in conviction is illegal, and conviction may not be used in a sentencing on a subsequent offense). In *Commonwealth v. Charles*, 339 Pa.Super. 284, 488 A.2d 1126 (1985) (citing *Commonwealth v. Calvert*, 463 Pa. 211, 344 A.2d 797 (1975), *Gideon v. Wainwright*, 372 U.S. 355, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Burgett, supra* ), this Court held likewise, that invalid convictions could not support enhancement of sentence on subsequent offenses. While some ambiguity has crept into the law as between prior arrests and convictions and their use in sentencing, the overwhelming weight of the law is that prior convictions must be established, as opposed to arrests, if any weight is to be given at sentencing. I have found no case which holds that a sentence may be enhanced or treated more severely upon consideration of arrests alone.

Only a conviction carries the weight which may result in a more serious sentence than would otherwise be the case. In the context of this case, a juvenile adjudication, in light of the expressed mandate of the legislature, is a consideration in sentencing. As such, it can not be construed as less than a conviction; it otherwise could not be given weight or "consideration" in sentencing.

In a similar fashion, the legislature, in a further exception to admission of the juvenile disposition of a person in a subsequent non juvenile proceeding, provided: Section 6354(b)(2) ... [I]f relevant, where he has put his reputation or character in issue. In doing so, the credibility of the witness is being attacked with time honored rules of evidence as to what records are available for this purpose. Again, only if the juvenile disposition is construed to be a conviction for purposes of this section, may the section be given the intended legislative effect. Quoting from Jenkins, *Pennsylvania Trial Evidence Handbook*, section 17.4, this becomes clear:

## § 17.4 CONVICTION OF CRIME

The credibility of any witness may be impeached by showing the conviction of a felony or a misdemeanor involving a *crimen falsi: Com. v. Williams*, 307 Pa. 134 (160 A. 602 (——)). The phrase *crimen falsi* relates to misdemeanors, not to felonies. The felony does not have to involve a *crimen falsi* in order to impeach credibility: *Com. v. Gold*, 155 Pa.Super. 364 (38 A.2d 486 (1944)). The term *crimen falsi* involves the element of falsehood. It includes everything which has a tendency to affect injuriously the administration of justice by the introduction of falsehood and fraud: *Com. v. Schambers*, 110 Pa.Super. 61, (167 A. 645 (——)); *Com. v. Jones*, 334 Pa. 321, (5 A.2d 804 (1939)). A crime involving *crimen falsi* tends to cast doubt on the veracity of the perpetrator: *Com. v. Gold*, 155 Pa.Super. 364, (38 A.2d 486 (1944)). The issue of what misdemeanor affects credibility is a question that is ordinarily for the trial judge.

There are many other ways of attacking credibility by impeachment as to reputation and character, none of which involves the use of a prior record. If a juvenile disposition is admissible, it must comply with the standard stated in section 17.4 above.

Carrying this one step forward, the legislature would appear to be acting at cross purposes by permitting juvenile records to be admitted for dispositional purposes in criminal cases, while denying the right to apply the same information to the guidelines of the Sentencing Code. Thus the term convicted in section 2154(a) *does* comprehend the adjudications which were removed from the protection of section 6354(a) by sections 6354(b)(1) and (2).

In support of this view is the very illuminating Opinion by Larsen, J. in *Commonwealth v. Thomas*, 510 Pa. 106, 507 A.2d 57 (1986). There, it was determined that juvenile shoplifting offenses could apply toward enhancement in retail theft of juveniles over sixteen, as the legislature excluded them from protection of the Juvenile Act.

The Juvenile Act does not seek to rehabilitate every juvenile who commits an unlawful act; rather, the Act's purpose is to "remove from children committing *delinquent acts* the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation." 42 Pa.C.S.A. § 6301(b)(2) (emphasis added). Since appellants' summary offenses were not delinquent acts within the meaning of the Juvenile Act, appellants had no right to the rehabilitative benefits offered under the Act, and the use of appellants' summary offenses to enhance the grading and sentencing of their subsequent crimes does not violate the purposes of the Act.

Further, appellants had no right to receive any particular type of treatment simply because they were juveniles when they committed their first offenses. *Inclusion within, or exclusion from, the provisions of the Juvenile Act is a matter within the discretion of the legislature.* Here, the legislature has made it very clear that individuals in appellants' positions are not eligible for consideration under the juvenile act ...

. . . .

*We hold, therefore, that the fact that appellants were juveniles at the time of their first offenses does not preclude the use of the convictions for those offenses to enhance the grading and sentencing for appellants' current convictions.*[14] *(Emphasis added)*

14. Appellants' citation to cases, in which this Court has held that a "juvenile record" may not be used to impeach a witness, is inapposite. *See e.g., Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); 42 Pa.C.S.A. § 6354. A "juvenile record" may not be used to impeach a witness because adjudications of delinquency are not criminal convictions, not simply because the individuals who have been so adjudicated were under the age of eighteen at the time they committed their delinquent acts.

*In addition, we note that the Juvenile Act itself provides that an adjudication of delinquency may subsequently be used against an individual for certain specified purposes; even if a juvenile is adjudicated delinquent under the Act, he is not entitled to commit subsequent crimes without his delinquent acts being taken into account.* See 42 Pa.C.S.A. § 6354(b) ("The disposition of a child under this chapter

may not be used against him in any proceeding in any court ... whether before or after reaching majority, except: (1) in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report....").  (Emphasis added)

*Id.*, 510 Pa. at 116–17, 507 A.2d at 62.

It would appear that the "adjudication" versus "conviction" controversy is merely a quibble over semantics.  Its irrelevancy is discernible from the omission of these terms from the definition section of the Code, and the matter requires no resolution, as it poses no real problem.  The legislature intended the term "conviction" to be applied in a different fashion according to its application under the Juvenile Act and the Sentencing Code.

Section 303.7(b)(1)(ii) clearly specifies the two conditions under which a juvenile record is to be included in sentencing computations:

1) where there was an express finding that the adjudication was based on the commission of a felony ...

2) where the adjudication occurred on or after the defendant's fourteenth birthday.

Both of these criteria are fully established in appellee's case.  The essence of these sections of the code is to assure legally supportable findings that a child, with sufficient capacity (14 years of age) to know of the serious nature of his behavior, is held accountable as a recidivist.  Whether the term used to describe that finding is adjudication or conviction, it is the finding of a commission of the felony that triggers computation.  Adjudication meets that purpose as definitively as conviction.  A child adjudicated delinquent is subject to penalty no less than a person convicted of a crime, regardless of the name given the procedure or judgment and thereby is entitled to due process consideration including the same degree of proof required in a criminal proceeding.  *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 358, 375 (1970).  Since an adjudication of delinquency requires proof beyond a reasonable doubt to establish the finding of delinquency, *Winship supra*, an adjudication is no less conclusive than a convic-

tion in establishing the felonious act which is the basis for subsequent computation of sentence to a later crime. This Court held in *Smith, supra,* that, "The intention of the Legislature is clear in its adoption of the policy which not only allows but requires examination of a defendant's juvenile record in fashioning appropriate sentences." *Id.* at 181, 481 A.2d at 1366. There we also held that it was appropriate to apply the prior juvenile adjudication for felonious offenses in computing the prior record score.

The rules of construction require us to give total effect to the legislative intent, section 1921, *supra.* Since I would find there is no ambiguity in the statute and that the sentencing commission acted properly and within its authority, I would reject the considerable argument made by the majority that laboriously attempts to construe it otherwise. Even had there been ambiguity as to the meaning of "conviction" as compared to adjudication, pursuant to the application of matters under section 1921(c)(1–8),[2] there can be no doubt as to the legislative intent in granting the powers to the Sentencing Commission and its proper exercise of those powers. We have held that sentencing guidelines are constitutional in *Commonwealth v. Kuphal,* 347 Pa.Super. 572, 500 A.2d 1205 (1985). If the trial court and majority position had any validity whatsoever, it was nullified by the action of the legislature, when, by almost unanimous vote of both houses, upon mandatory review of the Sentencing Commission and its activities as required under the Sunset Law, the Commission was reinstated for a

**2.** 1 Pa.C.S.A. § 1921. Legislative intent controls

. . . . .

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

period of 10 years. In it's 1985 Annual Report, the Commission reported as follows:

### Sunset Review Process

During 1985 the Commission was scheduled for sunset review in accordance with the provisions of the Pennsylvania Sunset Act. This Act specifies procedures for reviewing agencies and determining whether they should be continued, altered or terminated. During Fiscal Year 1984–85 a sunset performance audit of the Commission was conducted by the Legislative Budget and Finance Committee. The Committee's final report recommended continuation of the Commission with several recommended minor changes. The report was turned over to the Senate Judiciary Committee for sunset review.

The Senate Judiciary Committee held public hearings on the Commission in October 1985 and released their report in January 1986. The report concluded that:

1) Termination of the Commission would harm the public welfare;

2) There is insufficient overlap of functions to warrant the elimination of the commission or transfer of its duties to another agency;

3) There is at present no more economical way of accomplishing the Commission's objectives;

4) The guidelines have been successful in addressing the need for more uniform and appropriate sentences;

5) The continuation of the Commission's functions would be in the public interest;

6) The Commission has encouraged and made continuous use of public input; and

7) There does not appear to exist a less restrictive alternative method of providing the same services to the public.

The Senate Judiciary Committee endorsed the continuation of the Commission with a few recommended changes. These recommendations formed the basis of Senate Bill 1343 of 1986 reestablishing the Commission for another

ten years. The bill was passed 47 to 1 in the Senate, 195 to 1 in the House (as amended) and 48 to 1 when it was returned to the Senate for concurrence. The bill was signed by the Governor as Act 41 of 1986 on April 30, reestablishing the Commission for another ten years effective May 1, 1986.

In reestablishing the Commission, the General Assembly made several changes to the Commission's legislative mandate: The Commission was reestablished as an agency of the General Assembly; the Commission was required to meet at least four times each year; the Commission's quorum requirement was reduced from nine members to seven members; the Commission was directed to establish a plan and timetable to collect and disseminate information relating to incapacitation, recidivism, deterrence and overall effectiveness of sentences imposed; and the Commission was given clear authority to monitor compliance with the guidelines and mandatory sentences and to require the completion and submission of forms promulgated by the Commission.

1985 Annual Report, *The Pennsylvania Commission on Sentencing*, p. 3. It must be presumed if the Commission had overstepped its authority in implementing the guidelines under consideration here, or if the legislative intent in implementing them had been misconstrued, the legislature would have required correction before reinstating the Commission and adopting the work of the Commission a second time with these matters included. We cannot presume these sections to be invalid.

The legislative intent is to strip away the cloak of juvenile immunity from the serious juvenile offender and legislation in the past session does just that, making the current discussion, in many respects, academic. In a bill (Act No. 165 of 1986) signed by Governor Thornburg on December 11, 1986 (effective in sixty (60) days from December 11), a new class of juvenile offenders is created, the "dangerous juvenile offender." The new law creates a statewide central repository for fingerprints, photographs and juvenile

records to aid in arrest and prosecution of juvenile offenders. It authorizes public disclosure of police records and files relating to the new class of offenders, allows police to fingerprint and photograph any child aged ten or older charged with an act, if commited by an adult, that would be a felony; it repeals the Youthful Offender Act thus assuring that criminals aged 18–20 received the same minimum sentence mandated for adult criminals. In commenting on the need for the bill, Governor Thornburg quoted a study showing that in 1985 in Pennsylvania, 23 per cent of all people arrested for violent crimes were under the age of 18 and that 20 per cent of the juveniles apprehended committed 68 per cent of serious juvenile crimes.

Act 165 also specifically directs the Sentencing Commission to include juvenile adjudications of delinquency in the prior record score of the guidelines and "define[s] 'prior conviction' as any finding of guilt or adjudication of delinquency whether or not sentence has been imposed prior to the commission of the current offense." *Pennsylvania Bulletin*, Vol. 16, No. 51, Dec. 20, 1986, p. 4868. The comments in the Bulletin indicate the legislation was in direct response to the finding in this case in the court below. (*Commonwealth v. Tilghman*, January Term 1984, No. 2193, Court of Common Pleas, Philadelphia County). It is an extraordinary matter for the legislature to enact clarifying legislation on issues which have not been acted upon by the appellate courts, and when done under these circumstances, it can only mean it is responding to the lower court misconstruing its intent. The legislation also specifically equates "adjudication" with "conviction" and, therefore, the difficulty such an interpretation posed for the majority appears of little consequence to the legislature.

The Commission, through its Chairman, Honorable John O'Brien, states:

[I]t is the Commission's view that . . . the juvenile adjudication of delinquency guideline provisions have continued to apply as they were written in the *Code*, because no appellate court has overturned them. The Commission is

republishing all of these provisions, and will resubmit them to the General Assembly as a safeguard in case a court reaches a different interpretation.

*Pennsylvania Bulletin, supra* at 4868.

I would, therefore, find the trial court did in fact err in its revision of sentence to exclude appellee's juvenile adjudication from his prior record score.

With respect to appellant's second claim, that is, the court's failure to consider the totality of the circumstances in determining the penalty, a review of the record reveals the court did in fact take note of the factors which appellant would emphasize, but drew an inappropriate conclusion. I feel that given the increase in the prior record score, a consistent sentence within the agreed upon range would be four to twenty-three months total confinement, the penalty originally specified.[3,4]

**3.** "Where a case requires a correction of sentence, this Court has the option of remanding for resentencing, or amending the sentence directly." *Commonwealth v. Simpson,* 316 Pa.Super. 115, 126, 462 A.2d 821, 826 (1983). I would choose to do the latter.

**4.** The majority's analysis fails in a number of respects which I will attempt to clarify: 1) Numerous discussions I have had with Judge O'Brien on this issue personally confirms that the Legislature and the Sentencing Commission intended to have juvenile adjudications applied as convictions in determining the prior record score, who reminded this writer that he and other juvenile court judges had testified to this need, to which the Legislature and the Sentencing Commission responded; 2) In the *Pennsylvania Bulletin,* Vol. 17, March 27, 1987, No. 13, in a proposal to amend the sentencing guidelines, 204 Pa. Code §§ 303.7 and 303.8, Commentary to Annex A, Judge O'Brien again states:

The Commission on Sentencing requests comments on the proposal which follow in Annex A. This proposal would amend the sentencing guidelines, 204 Pa.Code §§ 303.7 and 303.8.

JOHN W. O'BRIEN,
*Chairman*

*Commentary on Annex A:*

Annex A proposes amending 204 Pa.Code § 303.7(g) (relating to prior conviction) by incorporating into the guidelines the statutory definition of "previously convicted or adjudicated delinquent" which is required by Act 1986, December 11, P.L. No. 165, § 3, (effective February 9, 1987) [42 Pa.C.S. § 2154(a)(2) ]. *The definition in this act supersedes the definition of "prior conviction" con-*

*tained in the existing § 303.7(g), and the proposed amendment simply makes the guidelines consistent with the statute. Persons applying the guidelines should currently be using the definition contained in this Act, not the definition contained in the guidelines.*
(Emphasis added)

In the face of Judge O'Brien's previous statements and the reaffirmation of that position in the *Pennsylvania Bulletin, supra,* as recently as March 27, 1978, the construction placed by the majority on the Commission's overreaching and failure of legislative intent reflects a logic and analysis that is reminiscent of "Alice in Wonderland" and the novel "1984"; 3) While the mysticism that we ascribe to statutory construction, which ignores unequivocal intent in the face of inartful language and internal inconsistency, can be justified, the writer refuses to ascribe erroneous interpretation to the language of a statute and guidelines to which he contributed by testimony solicited by the drafters and which resulted in incorporated changes. Excerpts of that testimony, presented to the Sentencing Commission on December 8, 1980 in Pittsburgh, are as follows:

Our experience is that these crimes are serious and particularly with theft of automobiles and burglaries, and to some degree, purse snatch robberies, there is a pattern behind the crime and a multiplicity and continuation of the pattern over a long period of time that indicates a determined criminal intent. To disregard this pattern and the nature of those crimes as well as the assault crimes, which have some element of intimidation about them, is to ignore very serious behavior that should be considered when the child engages in similar activity upon reaching maturity. It is my recommendation that all felonies committed by juveniles should be considered toward the enhancement of the Offender Score when he becomes an adult, although I have no objection to considering only those offenses which occurred after 14, and to have a period of repose to the effect that after six years without involvement with the courts or the justice system, the record should not be considered.

.        .        .        .        .

Finally, there was some concern expressed by some Commission members as to the validity of Juvenile Court findings. Under the Juvenile Act, we must weigh the evidence in the same manner as does the Criminal Court and we are required to make specific findings on each charge, so that a delinquency finding on a specific charge has as much validity for sentencing purposes as a criminal conviction. The Sentencing Code should not give these findings any less consideration.

TAMILIA, J.
Testimony before
Sentencing Commission
December 8, 1980

The Legislature and Sentencing Commission *did* respond to this testimony and that of numerous judges throughout Pennsylvania and passed legislation in line with these recommendations. The original guidelines (1982 version) reflect the writer's statement on adjudications in juvenile court proceedings, and to remove opposition from Commission members who had concerns about juvenile adjudications, made it a requirement of 303.7(b)(1)(ii) which reads, "All prior juve-

I would, therefore, vacate judgment of sentence and reinstate the sentencing order of December 13, 1984.

Note 4—Continued

nile adjudications of delinquency *where there was an express finding that the adjudication was based on the commission of a felony or one of the weapons misdemeanors....*" (Emphasis added) Sentencing Guidelines Implementation Manual, July 1982.

This testimony and these comments were duly noted in an editorial in *The Pittsburgh Press* on Monday, December 15, 1980 (Attachment A). It is ironic that the Sentencing Commission and Legislature heeded the admonitions of judges and press in formulating the guidelines, whereas the majority would turn this around and do precisely what the editorial writers abjured in December 1980. The writer may be in the minority, but he is neither "myopic" concerning the legislative intent nor in error of his analysis of that legislation and Sentencing Commission implementation. Some of the contents of the above note are unorthodox but since the truth is never irrelevant, I believe the latitude permitted to a dissenting opinion permits it.

ATTACHMENT A

# The Pittsburgh Press

*A Scripps-Howard Newspaper*

Established June 23, 1884—Published Daily and Sunday

JOHN TROAN
Editor

ROBERT J. O'CONNELL
Business Manager

LEO KOEBERLEIN, Executive Editor

Offices, 34 Boulevard of the Allies, Pittsburgh, Pa. 15230
P.O. Box 566—Telephone (412) 263-1100

*Give Light and the People Will Find Their Own Way*

SCRIPPS - HOWARD

Page B-2      Monday, December 15, 1980

# On Destroying History

Although it smacks of burning books to destroy history, judges in Pennsylvania soon may be sharply restricted in their access to juvenile-crime records of adult offenders.

Indeed, the state Sentencing Commission proposes to exclude from a judge's pre-sentence review not only all crimes committed by defendants before they reached age 14 but also a wide range of offenses committed by them as older juveniles.

The effect of this absurdity would be to force judges to consider many hardened young crooks as mere first-time offenders.

★ ★ ★

Fortunately, numerous Common Pleas Court jurists, including Allegheny County's Patrick R. Tamilia and Raymond A. Novak, have attacked this proposal during public hearings.

So there's still a chance that the commission itself will have wise second thoughts. Or that the Legislature will have the good sense to kill this proposal before it becomes law next July.

Actually, the commission's present thinking represents a compromise between members who want to throw away the entire juvenile-history book for adult offenders and those who want to keep it in its entirety.

As a practical matter, however, the compromise is a change without significant difference.

As Judge Novak notes, the "peak crime years" for any defendant fall between his 14th and 24th birthdays.

And many of the juvenile offenses which would be excluded from a judge's consideration of adult criminals are what Judge Tamilia calls "pattern offenses that mark a chronic offender."

★ ★ ★

The fact is that any adult with a juvenile-crime record need have no fear of it being thrown up against him as an adult if he stays out of trouble as an adult.

If on the other hand an adult criminal has merely picked up where he left off as a juvenile offender, a judge should know this in order both to properly punish the criminal and to safeguard the public.

It is to be hoped, therefore, that the Sentencing Commission will reassess its position and reject the wrong-headed notion that judges should be kept in the dark about the juvenile-crime records of adult criminals.

But if the commission fails to do so, the Legislature should step in and blow the whistle.